No. 58.—The JUSTICES OF THE INFERIOR COURT FOR THE COUNTY OF MORGAN, for the use of JOHN C. SELMAN and another, plaintiffs in error, *vs.* WILLIAM W. SELMAN, CARTER W. SPARKS and others, defendants.

[1.] A *retraxit* is a voluntary termination by the plaintiff, in open Court, of his suit, and a judgment thereon is a complete bar to a subsequent action for the same cause.

[2.] A *dismission* of a suit does not, in this State, amount to a *retraxit*, and is no bar to a future suit for the same cause of action.

[3.] When the provisions of the Act of 1812, authorizing an executor, administrator or guardian, whose residence shall be changed from one County to another, to make his returns in the County in which he lives, are fully complied with, the sureties on the first bond are discharged from all farther liability on account of their principal.

[4.] When the Court of Ordinary have granted letters testamentary, administration or guardianship, to a person entitled and capable of discharging the duties of the trust, no new appointment can be made, until the former authority is vacated by death, removal or in some other way; and the new appointment being void, the bond also is void, given for the faithful performance of the trust delegated to the new appointee.

Debt on Guardian's Bond, in Paulding Superior Court.    Tried before Judge WRIGHT, February Term, 1849.

This was an action of debt upon a bond given to the Justices of the Inferior Court of Morgan County, by William W. Selman, as guardian of the orphans of Benjamin Selman, deceased, with Martin P. Sparks, Carter W. Sparks and John Howard, as sureties, dated the 12th January, 1830, to which action the defend-

Justices of Inferior Court of Morgan Co. *vs.* Selman, Sparks and others.

ants pleaded a *retraxit,* by the plaintiffs, and a discharge by the guardian's removal to Coweta County, and giving a new bond in that County.

On the trial, the plaintiff gave in evidence a certified copy of the bond, the appointment of Selman as guardian, and his returns in Morgan County; and also an exemplification of a decree in Coweta Superior Court, in favor of the plaintiffs against their guardian, for $5255 70. Other evidence, not material to be recited, being given in evidence, the plaintiffs closed.

The defendants then tendered in evidence, an exemplification from the records of the Court of Ordinary of Coweta County, showing the appointment of the said Selman as guardian of the plaintiffs below, by said Court of Ordinary of Morgan County, and also the appointment of the said Selman as guardian of the plaintiffs by the Court of Ordinary of Coweta County, and a certified copy of the bond of the said Selman, given in the County of Coweta, as guardian, under the last appointment, with his actings and doings in both Counties, which the defendants pleaded as a discharge from the liabilities of the first bond.

To this evidence counsel for the plaintiffs objected, on the ground that the record showing that the appointment of Selman as guardian in Morgan County, was unrevoked—the latter appointment in Coweta County was void—which objection was overruled by the Court and the evidence admitted. To which decision counsel for plaintiffs excepted.

From this record it appeared, that William W. Selman was appointed guardian in Coweta County, at January Term, 1835, and gave bond with the usual conditions, for the discharge of his duties under the appointment that day made. On the 10th day June, 1835, a copy of his actings and doings in Morgan County, certified by the Clerk on February 23d, 1835, was recorded in the Clerk's office of the Court of Ordinary of Coweta County.

It was admitted on the trial, that an action had been before then commenced in Paulding Superior Court, by these plaintiffs against Thomas H. Sparks, one of the defendants, on the same instrument and for the same purpose; and that on the trial of said case, after the evidence had been submitted to the Jury, argument had, and the Court had charged the Jury, plaintiffs voluntarily dismissed their cause; and that afterwards, the same plaintiffs brought another suit against another of the defendants on the

same instrument, and dismissed his suit under similar circumstances.

The defendants having pleaded these facts as a *retraxit* in bar of this suit, the Court decided that they did not constitute a bar. To which decision counsel for defendants excepted, and, by consent of parties, this exception was embodied in the same bill with the exceptions of the plaintiffs.

Counsel for plaintiffs requested the Court to charge the Jury, that the giving of the new bond and security in Coweta County, was not a discharge of the former securities, but was merely cumulative; which charge the Court declined giving, but charged the Jury, that the giving of the new bond in the County of Coweta, was a discharge of the securities to the bond given in Morgan County, and that the Jury could not find against the defendants for any waste committed by the guardian subsequently to the giving of the new bond in Coweta County.

To which charge and refusal to charge, the plaintiffs, by their counsel, excepted.

Judge *Warner* having been of former counsel, did not preside in this case.

O. WARNER & D. IRWIN, for plaintiffs in error.

1st. The bond executed by the guardian in Coweta, in January, 1835, is void in law, because it was made in pursuance of an appointment of Selman as guardian by the Court of Ordinary of Coweta; that Court having no jurisdiction to make the appointment, inasmuch as Selman had, in 1830, been appointed guardian of the same minors by the Court of Ordinary of Morgan County; which appointment was of full force, and unrevoked at the time of the granting the letters of guardianship to Selman by the Court in Coweta. *Prince's Dig.* 259. 1 *Wm. Ex'rs,* 359. *Toll. E.* 73. *Toll. Ex'rs,* 98. 1 *Comyn's Dig.* 594. 3 *Cond. Rep.* 1. 14 *Peters' Rep.* 33. 1 *Stewart,* 529.

2d. Before the old securities can claim a discharge from liability on their bond, they must show that the new bond was made in compliance with the Act of 1812. The record shows that the Statute has not been complied with. By the Act of 1810, (*Prin. Dig.* 240,) guardians were required to make their annual returns

to the Court of Ordinary which appointed them. To remedy this evil and inconvenience, the Act of 1812 was passed. The new bond contemplated by the Act of 1812, should be given for the performance of the duties of the guardian, under and by virtue of his original appointment, by the Court of Ordinary of the County from which he removed. The Statute contemplates no new appointment.

3d. If the bond made in Coweta had been executed in pursuance of the Act of 1812, it would be no discharge of the securities of the old bond. A guardian appointed by the Court during minority, continues until the ward arrives at twenty-one years of age, unless removed for cause shown. 1 *Swift's Digest*, 49. 1 *John. Ch. Rep.* 25.

The principles decided in the case of *Woods & Vason vs. Justices of Inferior Court of Morgan*, (1 *Kelly*, 84,) and in the case of *Bryant & Beall vs. Owen and Wife*, (1 *Kelly*, 355,) do not apply to the case at bar. In these cases, the securities had applied to the Court of Ordinary having jurisdiction, to be discharged from their liability, under an Act of the Legislature, which expressly gives authority to the Court to discharge the security upon application by the security. In these cases the security had been discharged by the Court of Ordinary, under a Statute passed for the express purpose of relieving and discharging securities on administrators' and guardians' bonds. In such cases the security is discharged from future liability, not by implication of law, but by the express provisions of the Statute.

The Act of 1812 does not provide, that when the new bond is given, the old security shall be discharged. He is left to his remedy under the Acts of 1805 and 1810, passed for the express purpose of relieving and discharging securities upon application.

The fact that the Act of 1812 does not declare that the old security shall be discharged upon giving the new bond, is strong that the Legislature did not intend he should be.

The Legislature had already provided a mode by which the security could obtain relief.

The old securities are not injured by the giving of the new bond. If the new bond is valid, as the defendants in error contend it is, then they can compel the new securities to contribute, inasmuch as the new securities are liable for past as well as fu-

ture waste by the guardian. 1 *Kelly*, 84. 2 *Bailey*, 397, *and cases therein cited.*

A security will not be discharged by implication of law, and he is liable unless the Statute authorizing a new bond to be given expressly discharge him. *United States vs. Nichall*, 6 *Conden. Rep.* 611.

The giving a new official bond by a Post Master, does not discharge his securities on the old bond for past or subsequent defaults of his principal. *Post Master General vs. Reeder*, 4 *Wash. C. C. Rep.* 678, *cited in* 3 *U. S. Dig.* 498.

W. Akin & W. H. Underwood, for the defendants in error, made the following points :

1st. The dismissal of the two former suits, under the circumstances, amounted to a *retraxit*, and was a bar to the present suit.

2d. The order of the Court of Ordinary of Coweta County, appointing William W. Selman guardian, did not affect the legality of the bond he gave. If the Court did *more* than the law required, it did not destroy that which was done according to the law.

The Court in Coweta had jurisdiction of the matter, and had the right to determine what was necessary to be done in the premises, in order to allow the guardian to remove his guardianship and to make his returns in Coweta. 1 *Kelly*, 486.

3d. The removal of the guardianship to the County of Coweta, and giving new bond and security as the Statute required, discharged the sureties to the first bond from all liability for waste committed by the guardian after the new bond was given. *Prin. Dig.* 241, 242. 2 *Bailey*, 60. 5 *Mason's C. C. R.* 82. *Theobald on Principal and Surety*, 43. 3 *Washington C. C. R.* 70. 2 *Bailey*, 486. *Ib.* 524.

*By the Court.*—Lumpkin, J. delivering the opinion.

The defendants, among other things, insist that being heretofore twice impleaded for the same cause of action, which suits were dismissed—the judgments rendered for the costs in their favor—were in the nature of judgments as upon a *retraxit*, and are a complete bar to a subsequent action for the same cause. It is

contended, on the other hand, that the doctrine of *retraxit*, as known to the system of English pleadings, is not of force in this State. We can see no good reason why it is not.

[1.] A *retraxit* is the public and voluntary renunciation by the plaintiff, of his suit or cause of action, in open Court; and if this is done, and a judgment is entered up thereon, we think that the right of action is forever gone. Why should it be otherwise? Its design is to put an end to litigation—a most desirable object in any country. If the plaintiff not merely fails to prosecute his suit, but goes one step farther, and admits either that he never had any cause of action, or that if he had, he is willing to renounce it, and the defendant signs up judgment thereon, as he is by law entitled to do, the effect is precisely the same as the record of a *verdict* and general judgment in his favor.

[2.] But we think there has been no *retraxit* in this case. It is true, the plaintiff has twice *dismissed* his suit. This, by the law, and the unbroken practice of our Courts since the organization of our Judiciary, he had a right to do, without prejudice, except as to the payment of costs.

Chief Justice *Marshall*, in *Hoffman vs. Porter*, (2 *Brock.* 156,) says the books mention a *retraxit*—a judgment of non-suit—and a discontinuance; that a *retraxit* only is a bar to a new suit, in which the plaintiff openly renounces his action, wherein it differs from a *mere dismission* by the party. The General Court of Virginia, in *Pinner, etc. vs. Edwards, etc.* (6 *Rand.* 674,) draw the distinction between a *dismission* and a *retraxit;* the former resulting usually from some obstructions in the progress of the cause, and not being a final disposition of it; whereas, a *retraxit* is a complete bar, and when done, the plaintiff cannot commence again. In *Evans vs. McMahan*, (1 *Ala. Rep.* 45,) the Supreme Court of Alabama sustained the distinction between a *dismission* and a *retraxit*. The question arose upon the sufficiency of the plea in bar, alleging, as in this case, a judgment by *retraxit*, but which substituted the words, "and *dismissed* the same," for "but from the same altogether withdrew himself." The form of the plea, as furnished by *Chitty*, is in these words: "The said A B came into the said Court, in his own proper person, and confessed that he would not farther prosecute his said suit against the said C D, but from the same altogether withdrew himself," &c. 3 *Chitty's Plead.* 477. The Court held, and we think very properly, that

the words, " and *dismissed* the same," were rendered entirely in-operative by what preceded and followed them, and could not be understood to make the judgment pleaded in that case indecisive of the rights of the parties, *as a judgment of dismissal would be.*

But the Act of 1843, (*Pamphlet, p.* 122,) is conclusive upon this point. To avoid the inconvenience and delay which frequently occurred on account of plaintiffs not being able to *dismiss* their suits except at regular terms of the Court, it authorizes it to be done during the vacation, on the same terms as if done in open Court, to wit: the payment of the costs, before they could re-commence the action.

[3.] The next question presented by this record, is one of great practical importance, involving as it does the proper construction of the Act of 1812, the second section of which is in these words.: "Any executor, executrix, administrator, administratrix or guardian, whose residence shall be changed from one County to another, either by the creation of a new County, removal or otherwise, shall have the privilege of making the annual returns required of them by this Act, to the Court of Ordinary of the County in which they reside, by having previously obtained a copy of all the records concerning the estates for which they are bound as executors, executrix, administrators, administratrix or guardians, and having had the same recorded in the proper office in the County in which they then reside, and having given new bond and security, as the law directs, for the performance of their duty." *Prince*, 241, '2.

What does this Statute authorize and require to be done, and what is the legal effect of a compliance with its provisions? The Act itself being silent as to the mode of its own execution, we deem it our duty to the people and the profession, to express our views briefly upon this subject. They will be considered as *directory*, at any rate, as to all *future* proceedings under this Act. We believe that an order ought to be entered on the minutes of the new Court, reciting the fact that the conditions of the Statute had been performed, to wit:: the record been filed and the security given; that a certified copy of this order should be exhibited to the old Court, and an order passed and placed upon their minutes, exempting the executor, administrator or guardian from his obligation to account farther to them. This done, both records are complete—that in the old County is closed up, and that in the

new opened. And we are of the opinion, that it operates as an entire transfer of the estate, and that the securities on the first bond are responsible only for past waste, and not for any future mismanagement. The whole trust, we repeat, is removed. All future orders for the sale of property are to be taken in the new County. Letters of dismission are to be granted there. How can they be obtained any where else? They are to be issued only upon a full and fair settlement of the accounts of the party applying for them. How can the *old* Court judge of proceedings which have transpired in another jurisdiction? Whereas, the *new* Court have the record from the beginning before them. I am aware that the Statute declares, that dismission shall be granted in the County where the letters issued; but this provision does not apply where, by authority of law, the trust has been removed elsewhere.

It is argued that a security is never discharged by *implication*. In the manner of procedure suggested by this Court, such would not be the fact. The order on the minutes of the old Court, discharging the principal, would operate as a release of his bondsmen. We will not undertake to say that it cannot be done in any other way. The Act of 1837, (*Pamphlet, p.* 123, 124, 125,) authorizing the transfer of property in this State, to a non-resident guardian, is very similar in its features to the Act of 1812. Bond and security is to be given abroad, and upon proper proof of that fact, the Court of Ordinary here is required to pass an order, directing a transfer of the funds. This done, and a suitable receipt taken, who doubts that the security for the resident guardian is discharged? And yet it is by *implication* of law. It may be said, that in the case put, the assets are not only removed out of the State, but that they are placed in other hands; and this is certainly true. The illustration is merely used, to show that a surety may be discharged without a formal judgment for that purpose; and after all, a security residing in Chatham, would be able to exert no more supervision or control over an executor, administrator or guardian who had removed to Dade, or *vice versa*, than if the State boundary was passed. The Act never contemplated a continuing liability on the part of the old sureties, under such circumstances. Were we constrained thus to expound it, we should not hesitate to pronounce it unconstitutional. For the objection to a law, on the ground of its impairing the obligation of a contract, does not

depend on the extent of the change which the law may make in it. Any deviation from its terms, by postponing or accelerating the period of performance which it prescribes, or imposing conditions not expressed in the contract, or dispensing with the performance of those which are, however minute or apparently immaterial in their effect upon the contract of the parties, impairs its obligation, and consequently is within the constitutional prohibition. *Smith's Commentaries*, 382. A surety binds himself for the faithful performance of the duty of the trustee, in a particular County, where they both live. To make him amenable for the good conduct of his principal to another jurisdiction, in another and perhaps remote county, would be to change the terms of the contract—*to impair its obligation.* Such has never been the practical interpretation of this Act—such, we apprehend, was not the intention of the Legislature.

But another example may be adduced to negative the doctrine that a surety is never discharged by implication. A party dissatisfied with the decision in the Justices' Court, pays the costs, and obtains a *certiorari*, having given bond and security for the eventual condemnation money. On the hearing, the judgment below is *affirmed* by the Superior Court. The party cast sues out a writ of error, and supersedes the judgment of affirmance by again giving bond and security, as required by law. I ask, is not the surety on the first bond relieved? His undertaking was for the payment of the condemnation money in the Superior Court; and this judgment has been vacated or superseded by the farther appeal of the party, as allowed by law. In principle we see no difference in the two cases.

We agree with the able counsel for the plaintiffs in error, that the mere taking of a *new* bond does not, necessarily, release the old sureties, and especially where the new bond is taken by authority of law, for the purpose of strengthening the existing security. If the security on appeals, good at first, becomes insolvent pending the appeal, the party appealing may be compelled to give additional security ; but this does not relieve the old. If A and B are securities for C on his administration bond, and A, becoming dissatisfied, applies to the Court of Ordinary and is discharged, C continuing in his office, giving counter security—it has been ruled, that the discharge of A would not, in such case, release B, the other original security. Whether he will be liable for the

whole or a moiety only of the bond to which he is a party, is a question about which there is a contrariety of opinion and of decision.

Each transaction of this character must turn, in a good degree, upon the fact of whether or not the second or subsequent bond be given for a new and different undertaking altogether. If so, it does operate, *ipso facto*, as a discharge of the prior parties.

It only remains to enquire whether or not this case comes within the rule thus laid down? Has there been either a literal or substantial compliance with the Act of 1812? That Statute clearly contemplates a continuation of the old representation and not the creation of a new one. If there was room to doubt on this point, the amendatory Act of 1843 (*Pamphlet*, 58,) would settle the matter. It provides, that nothing in the second section of the Act of 1812, shall be so construed as to compel executors who are not bound by the existing laws of this State to do so, to give security upon removing their proceedings from one County to another. All *they* have to do is, to file an exemplification of the record of their former actings and doings. Others have to give a *new* bond in substitution of the old, and not for *finishing*, but for the full administration of the estate, "*as the law directs.*"

[4.] Is the present bond, which is the foundation of this suit, taken under the Act of 1812, *to continue* the already existing guardianship of Mr. Selman, granted to him in the County of Morgan, *as it should have been*, or to institute a new, distinct and independent guardianship in the County of Coweta? If we look to the defence set up in this case, we shall see the construction which the defendants themselves and their counsel put upon the obligation. They refer to it as a separate and original undertaking. If we examine the instrument itself, the same facts stand out in unmistakable features. Not only is there no allusion to the former guardianship—that would have been, perhaps, a fatal omission— but it purports plainly on its face, to be given under, and by virtue of, the new appointment made by the Court in Coweta, and guarantees only the proper discharge of the principal's duty as such newly appointed guardian. Can it be pretended that this is a compliance with the Act of 1812? Is not this whole proceeding void? No *new* guardianship could be created while the former remained unrevoked. The doctrine of the Common Law

in force in this State, and adopted in every part of the Union, is, that when the Court of Ordinary have granted letters to persons entitled and capable of discharging the trust, they have emptied or divested themselves of jurisdiction by the transfer, and cannot resume jurisdiction over the same matter until it reverts to them by the occurrence of some of those events or disabilities which, either for the time or perpetually, vacate the office—as the death of the party, the repeal of his authority, &c.    *Went.* 39. 4 *Burns' Eccl. Law.* 3 *T. R.* 130.    *Toller,* 128.    *Rose vs. Hunely,* 4 *Cranch,* 244.    *Wise vs. Withers,* 3 *Cranch,* 331.

In *Griffith vs. Thugier,* (8 *Cranch,* 9,) the Supreme Court of the United States (*present all the Judges*) held, that so long as a qualified executor is capable of exercising the authority with which he is clothed or has been invested, that authority cannot be conferred, by the Court of Ordinary, on any other person; and that if, during such capability by the executor, the Ordinary grant administration, either absolute or temporary, to another person, *that grant is totally void.*

In the case before us, the validity of the second appointment is not seriously insisted on.    It is contended, however, that it is merely an act of supererogation, and that although in itself a nullity, that, nevertheless, the bond in Coweta is good.    The misfortune is, that the bond itself is wrong, being taken under the new appointment, and consequently must fall to the ground with it. No suit can be maintained on it.    It cannot, therefore, operate as a release of the old securities.    But for the fact that the record, or a portion of it, has been filed in Coweta, there is not a particle of connexion between the guardianship in the two Counties.

We regret, extremely, to be driven to this conclusion, but it is irresistible.    If it were a case of doubt, for myself, I should unhesitatingly decide for the defendants in error, not because the plaintiffs are strangers to me.    My sympathy, I trust, would not in any case control my judgment.    But here it is *orphan* against *orphan*—the children of Selman, the deceased ancestor, seeking to recover their patrimony out of the children of Sparks, the security of their guardian.    But, there being no room to doubt, the law must take its course, whatever ruin it may entail on the parties.    While we have discarded, in this country, the servile maxim, that the King (*Rex*) can do no harm, as good citizens it be-

comes us, perhaps, to maintain that, *kex* (the only potentate we acknowledge) *non potest peccare.*

The judgment below must be reversed and a new trial awarded.