## WOLFE ET AL., TRUSTEES, *v.* FIDELITY & DEPOSIT COMPANY OF MARYLAND.

*Probate court — Jurisdiction — Surety bond of trustee — Authority to reduce amount, accept new bond and sureties — Collateral attack.*

1. Under Section 10591, General Code, the probate court has authority to reduce the amount of the bond of a trustee, accept a new bond, and discharge the sureties upon the former bond, where it finds such action to be to the best interests of the estate.

2. Where there are compensated sureties upon the original bond, the cost of which is paid by the estate, the reduction of such premium charge resulting from reducing the bond is sufficient to support the judgment of the probate court in ordering a new bond in reduced amount and in releasing the sureties upon the former bond.

3. Such action of the probate court in accepting the new bond and releasing the sureties upon the former bond is within the jurisdiction of such court and therefore can not be collaterally attacked.

(Decided January 9, 1919.)

ERROR: Court of Appeals for Franklin county.

*Mr. Edward C. Turner,* for plaintiffs in error.
*Messrs. Daugherty, Todd & Rarey,* for defendant in error.

KUNKLE, J. In the lower court the plaintiffs in error were defendants and the defendant in error was plaintiff.

It appears from the petition that the plaintiff below, a surety company, sought to recover judgment against defendants below, as trustees under the will of Henry C. Pirrung, deceased, in the sum

of $2,500, for premium on a bond upon which it was surety for such trustees.

Defendants below were required by law and the order of the probate court to give a bond or bonds for the faithful discharge of their duties as such trustees. The amount of such bond or bonds to be so given by said defendants as such trustees was fixed by the probate court at the total sum of $1,750,000.

The defendants below jointly gave three several bonds as such trustees. Two of such bonds were in the sum of $500,000, and one was in the sum of $750,000. One of the said $500,000 bonds was executed April 5, 1915, and, among other things, was conditioned as follows:

"That if the said trustees should well and truly do, perform and discharge with fidelity all and singular the duties which they, as such trustees, should do, perform and discharge, and act in all things as required by law, and faithfully account for all money and funds that might come into their hands as such trustees, then said bond should be void; that otherwise the same should be and remain in full force and virtue in law."

A copy of the bond is attached to the petition.

The petition recites that the defendants are still acting as such trustees under said appointment and that the estate has not been settled or the trust terminated; that to procure the plaintiff to sign and execute the bond as surety the defendants and each of them severally made application to plaintiff in writing, and in said application defendants and each of them agreed that in consideration of the plaintiff executing or guaranteeing the bond the defendants

would pay in advance the sum of $2,500 premium, upon execution of the bond, and the sum of $2,500 annually thereafter until plaintiff should be furnished with satisfactory and conclusive evidence of the termination of its liability under said bond; that plaintiff accepted said applications, and each of them, and duly signed and executed said bond, and thereby became liable for any default of said trustees, or either of them, in the particulars recited in said bond; and that the liability of plaintiff on said bond has not been terminated.

The petition also states that a further premium in the sum of $2,500 has become due and payable, but defendants have failed and refused to pay the same or any part thereof, and therefore asks judgment in the sum of $2,500.

Defendants below filed an answer which in brief states that on April 5, 1916, on their application and showing that the total amount of their said bonds, namely $1,750,000, was excessive and burdensome, and unnecessary for the protection of said trust estate, the probate court—ordered in due form made and entered upon said application and the evidence adduced—reduced the bond or bonds which should thereafter be given by said trustees to the total sum of $1,250,000, and ordered that the trustees should immediately give a new bond or bonds in the total sum of $1,250,000, with sureties to the approval and satisfaction of the court and conditioned according to law, for the faithful discharge of their duties as said trustees; that on April 5, 1916, said trustees did, pursuant to said order, give new bonds as said trustees in the total amount of $1,250,000, with sureties to the accept-

ance and approval of said probate court; and that thereupon said probate court duly ordered that said bonds given April 5, 1915, including the bond upon which said plaintiff company was surety, should be no longer operative for the protection and indemnity of said trust estate for accounts or transactions thereafter occurring, and that said plaintiff company was, on said 5th day of April, 1915, to take effect on and after said 5th day of April, 1915, released and discharged as surety on said bonds.

Plaintiff below demurred to the answer upon the ground that the probate court was without jurisdiction to release plaintiff as surety on said bond.

This demurrer was sustained upon the ground that the probate court had no jurisdiction to release the surety company, and the court held that the trustees were liable upon their separate applications to the said surety company.

Defendants below not desiring to plead further, a final judgment was rendered in favor of the plaintiff, and from such judgment defendants below prosecute error to this court.

Plaintiffs in error in substance claim that the lower court erred:

1. In holding that said demurrer did not constitute a collateral attack upon a proceeding of the probate court.

2. In holding that the probate court was without jurisdiction to release a surety unless the legislature first passed a statute authorizing such action, and providing for notice, etc., because the beneficiaries of the estate had a vested interest in the bond.

3. In holding that although defendants had been sued jointly as trustees, they might be held liable jointly as individuals.

We have carefully considered the pleadings in this case and also the very helpful briefs filed by counsel. We shall, however, not attempt to discuss in detail the various authorities cited by counsel.

Section 10591, General Code, provides:

"Every trustee appointed in a will, before entering upon his duty as such, must execute a bond with freehold sureties, payable to the state, in the probate court of the county in which such will is admitted to probate, to the satisfaction of the court, conditioned for the faithful discharge of his duties as trustee; except that, when by the terms of a will, the testator expresses a wish that his trustee may execute the trust without giving bond, the court admitting the will to probate, may grant permission to the trustee to execute the trust with or without bond. When granted without bond, at any subsequent period, upon the application of a party interested, the court may require bond to be given; and, upon the application of an interested party, if deemed necessary, require a new or additional bond at any time before the completion of the trust."

Section 10214, General Code, provides:

"The provisions of part third and all proceedings under it, shall be liberally construed, in order to promote its object, and assist the parties in obtaining justice. The rule of the common law, that statutes in derogation thereof must be strictly construed, has no application to such part; but this section shall not be so construed as to require a liberal construction of provisions affecting personal liberty, relating to amercement, or of a penal nature."

The section of the code first above quoted, expressly provides for the giving of a new or addi-

tional bond. Under this section of the code the probate court upon the application of an interested party can authorize or require either a new or an additional bond to be given.

We can not concur in the suggestion that the giving of a new bond and the giving of an additional bond mean one and the same thing.

We think the legislature intended to confer upon the probate court discretion either to require an additional bond or to authorize the giving of a new bond, according to the circumstances of the case. We also think the said trustees were interested parties, as provided by Section 10591, and could make an application for the giving of a new bond.

In the case at bar it appears that the probate court found there was a necessity for decreasing the amount of the bond of said trustees. The finding as to such necessity is not disputed.

It is clear that the action of the probate court was beneficial to the trust estate, because it materially decreased the cost charged against the estate as premium in favor of the compensated surety. It is clear that such advantage could not be secured except by the execution of a new bond and a release of the sureties upon the old bond. It is a matter of common knowledge that in the administration of trust estates, and especially when compensated sureties are involved, the circumstances frequently justify a reduction of the amount of the official bond.

Section 10214, General Code, above quoted, requires a liberal construction of the provisions of part three and all proceedings thereunder. We think a liberal and practical construction of Section 10591 authorizes the acceptance by the probate

court of a new bond and the incidental release of the sureties upon the old bond.

Counsel for defendant in error have cited and reviewed in their brief many cases from other jurisdictions to the effect that the acceptance of a new bond will not operate to release the sureties upon the old bond in the absence of a statute expressly authorizing such release. We acknowledge the weight of such authorities, but think most of those cases can be distinguished from the case at bar upon the ground that they did not involve a statutory provision similar to Section 10591, General Code, and a statutory rule of construction similar to Section 10214.

Notwithstanding the rule announced in the cases so cited we find a contrary rule established by the supreme court of the United States in the case of *Veach* v. *Rice,* 131 U. S., 293.

In this case an effort was made to hold the sureties upon both the original and the new bonds, but the court held that the original bond was discharged by the giving and acceptance of a new bond, and, at page 317, the court, in referring to the case of *Justices, etc.* v. *Selman,* 6 Ga., 432, say:

"The second section of an act of 1812 came under consideration, which read as follows: 'Any executor, executrix, administrator, administratrix, or guardian, whose residence may be changed from one county to another, either by the creation of a new county, removal or otherwise, shall have the privilege of making the annual returns required of them by this act, to the Court of Ordinary of the county in which they reside, by having previously obtained a copy of all the records concerning the

estates for which they are bound as executors, executrix, administrators, administratrix, or guardian, and having had the same recorded in the proper office in the county in which they then reside, and having given new bond and security, as the law directs, for the performance of their duty.'

"The court held, Lumpkin, J. delivering the opinion, 'That the mere taking of a new bond does not, necessarily, release the old sureties, and especially when the new bond is taken by authority of law, for the purpose of strengthening the existing security,' but that when the second or subsequent bond is given for a new and different undertaking, it operates, *ipso facto,* as a discharge of the prior parties and hence that when the provisions of the act are fully complied with the sureties on the first bond are discharged from all further liability on account of their principal.

"We are of opinion that the court erred in rendering a decree against the sureties on the joint bond of Erwin and Gray for a *devastavit* committed after June 12, 1876."

In the case at bar the purpose of the new bond was not to strengthen an existing security, but was expressly intended to reduce the amount of the bond and the cost of premium chargeable against the trust estate.

This object could only be accomplished by the release of the former sureties.

We think the probate court had jurisdiction under the circumstances disclosed by the pleadings, and the provisions of our code above cited, to make the order for a new bond and to release the sureties upon the old bond.

The finding and order of the probate court being within the jurisdiction of the court, is subject to the well-established rule against collateral attack. *Shroyer, Gdn.,* v. *Richmond et al.,* 16 Ohio St., 455; *Union Sav. Bank & Trust Co., Exr.,* v. *Western Union Tel. Co.,* 79 Ohio St., 89; *Wilberding, Admr.,* v. *Miller et al.,* 90 Ohio St., 28, and various other Ohio authorities.

It therefore follows that the judgment of the court of common pleas should be reversed, and, if the plaintiff below desires to file a reply to the answer, the case will be remanded. Otherwise this court will proceed to render the judgment which the lower court should have rendered.

*Judgment accordingly.*

ALLREAD and FERNEDING, JJ., concur.