GROLLMAN v. LIPSITZ.

1. ATTACHMENT—FINDINGS OF FACT—FRAUD.—In passing upon affidavits in attachment, this court cannot review the findings of the Circuit Court as to the credibility of the witnesses or the truth of their statements. But the Circuit Judge erred in this case in holding that plaintiff's affidavit, if true, did not disclose a case of fraudulent disposition of property.

2. IBID.—AFFIDAVITS IN REPLY.—The Circuit Judge, in stating that he would

consider only such parts of reply affidavits as were in reply, erred in not indicating what portions were admissible.

3. IBID.—SERVICE.—An attachment should not be vacated for non-service of copies of attachment and affidavits on the defendant, as the statute does not require such service.

4. IBID.—THE UNDERTAKING in attachment does not require a seal, and may be signed in the partnership name by one of the firm.

5. IBID.—IBID.—ATTORNEY.—The officer issuing an attachment must require proof of an attorney's authority to sign the plaintiff's name to the undertaking, and this power of attorney should be filed, but the failure to file it is not fatal.

6. IBID.—IBID.—WITNESSES—RULES OF COURT.—The statute does not require an undertaking in attachment to be witnessed; and as the rules of court cannot impose conditions not required by statute, so much of Rule 66 of the Circuit Court as requires undertakings to be witnessed is inoperative.

7. IBID.—AFFIDAVITS.—An affidavit in attachment may be made by any one who can depose as to the facts.

8. IBID.—IBID.—HOMESTEAD.—An affidavit in attachment, alleging a fraudulent disposition of property, is not insufficient for failing to state that the property disposed of was not part of defendant's homestead.

9. IBID.—UNDERTAKING—PARTNERSHIP.—An undertaking in attachment by a partnership may be signed either with the firm name or by the several partners, the intention to bind the partnership being in some way indicated in the latter case.

Before TOWNSEND, J., Beaufort, July, 1894.

Motions to vacate attachments in eight cases against A. J. Lipsitz, the several plaintiffs being L. Grollman, M. Ferst's Sons & Co., D. O'Neill & Son, Geo. W. Steffens & Son, Savannah Grocery Company, Savannah Steam Bakery Company, M. Hornik & Co., and Waterhouse & Danner. The affidavit of L. Grollman was as follows:

Personally appeared L. Grollman, who, being duly sworn, says: A. J. Lipsitz, defendant above named, has removed and disposed of his property with intent to defraud his creditors; that prior to the 10th day of March, 1894, said A. J. Lipsitz had three stores, one at Kean's Neck, one on Bay street, in the town of Beaufort, and one on Bladen street, in said town; that on the 10th day of March, 1894, he made a bill of sale of his store on Bay street, in the town of Beaufort, to his brother-in-

law, one Orlansky, as shown by the record of sale in the office of the register of mesne conveyance for Beaufort County. That on the 13th day of April, 1894, the said A. J. Lipsitz made his note and chattel mortgage of same date for the sum of two thousand eight hundred and thirteen dollars, to one S. Hirschmann, to be paid on the 22d day of May, 1894, which said mortgage was recorded on the 12th day of May, 1894; that by said mortgage he mortgaged to said Hirschmann all his stock of goods of every kind and description, including weights, measures, show cases, and store fixtures then in, or thereafter to be placed in, his store at Kean's Neck, and his store on Bladen street, in the town of Beaufort, and, also, his horses, cows, wagons, and buggies at Kean's Neck and in the town of Beaufort; that it is provided in said mortgage, that in case of default the mortgaged property shall be sold upon an advertisement of three days; all of this appears of record in the office of the register of mesne conveyance for Beaufort County. That deponent has been in the employ of the said Lipsitz for some time and is acquainted with his business; that said Lipsitz is indebted in considerable sums to a number of creditors, but that, from his knowledge of the affairs of said Lipsitz, he is satisfied that he was not indebted at the time of making said mortgage in any sum to the said S. Hirschmann, unless, perhaps, to the trifling amount of one hundred dollars. That he has been informed, that when the said mortgage was recorded, it was delivered by the register to a negro boy in the employ of the said Lipsitz; that the source of this information is the register himself, and the record of said mortgage showing delivery to a negro. That on the 12th instant, A. J. Lipsitz brought, in a buggy, to Kean's Neck one Black, son of the sheriff of Colleton County, who immediately took charge of said store at Kean's Neck, and closed it up under the direction of said Lipsitz, said Black claiming to act as the agent of the mortgagee; that immediately thereafter, on the same day, said Lipsitz returned to Beaufort, carrying with him in his buggy said Black, who, upon arrival at Beaufort, took charge of and closed in the same manner said store on Bladen street. That from the above facts and circumstances, and from deponent's

knowledge of the business of said Lipsitz, having been with him some two years, he is satisfied and charges that said mortgage was fraudulent, and made for the sole purpose of defrauding the creditors of said Lipsitz. That in April last, about the middle of the month, said Lipsitz and his brother removed a quantity of goods, about 3 o'clock in the morning, from the said Kean's Neck store, and his brother carried them over to his store in Colleton County; that on the same day, A. J. Lipsitz brought a quantity of goods from Beaufort, and left them on the road at the house of one Daniel Holmes; that on same night, as he is informed by said Holmes, said A. J. Lipsitz, with his brother, took away said goods and carried them to the brother's store in Colleton County. That in May last, said A. J. Lipsitz, about daylight one morning, carried off a quantity of goods in a wagon, telling deponent that he was going to bring them to his store in the town of Beaufort; but deponent afterwards discovered that this was false, and that said Lipsitz carried said goods to Clover Hill, in Colleton County, and left them there at the store of his brother's son; that after finding this out, deponent charged said Lipsitz with the deception, and said Lipsitz then acknowledged it to him. That shortly after the making of the said mortgage, and after it had been put upon record, deponent spoke to said Lipsitz about the removal of goods by him surreptitiously as above stated, whereupon said Lipsitz told him that he had made said mortgage, and that he had done so for the purpose of keeping off his creditors, and he did not want to have too much stock on hand; that deponent told the said Lipsitz that he knew he was not indebted to said Hirschmann in the amount stated in the said mortgage, and that he, deponent, did not believe he owed Hirschmann anything; that said Lipsitz admitted that he did not owe Hirschmann the amount claimed, but said he owed him a little, and that he gave him the mortgage to keep off his creditors. That said Lipsitz has no other property than that covered by the mortgage, unless it be a small piece of real estate which is under mortgage, and deponent [sic] that his assets are far below his indebtedness.

The judge made an order setting aside the attachments in all the cases. There was one case, that of John F. Werner & Co., represented by other counsel, in which the motion to vacate was not resisted, it being admitted that the undertaking was fatally defective; this case, however, the judge took as a text for his decision, and in all the other cases referred to his decision in this case, deciding also upon special points in the other case. This decision was as follows:

The plaintiffs in this action attached the property of the defendant, and this is a motion to vacate the attachment. The motion is based on several grounds. The first relates to the insufficiency of the undertaking; the second to the exemption of the property under the homestead law; the third to the failure to show that a cause of action existed; the fourth to the failure to show fraud; the fifth to the omission to serve the defendant with copies of the affidavits and warrant; and the sixth to the falsity of the matters stated in the affidavit, which was relied on to show fraud on the part of defendant. The plaintiffs must rest the validity of the attachment on the status of the attachment proceedings at the time the warrant was issued. They cannot afterwards add anything to those proceedings by way of reply to motion papers or otherwise. *Myers* v. *Whiteheart*, 24 S. C., 203. I shall, therefore, consider the case as it was presented to the officer who issued the warrant. An inspection of the undertaking discloses the fact that the plaintiffs did not sign it; this is fatal, and it is null and void. *Bank* v. *Stelling*, 31 S. C., 369; *Wagener* v. *Brooker*, *Id.*, 375. In addition to this, the blanks in said undertaking render it of no binding force. *Clawson* v. *Sutton M. Co.*, 3 S. C., 420. There was, therefore, no jurisdiction, and the attachment was without authority, and must be vacated.

I will notice briefly the other grounds relied on by the defendant. The next ground, the second one, is that there was no affidavit to show that the property which, it is alleged, the defendant disposed of, was subject to attachment, or, in other words, was not a part of defendant's homestead. The omission was not fatal to issuing the warrant; the warrant might issue without such affidavit, but no part of the homestead could be

legally attached. It does not appear directly and definitely whether any part of the homestead was attached or not.

Defendant's third ground for this motion is, that the plaintiffs' failed to show, at the time the warrant was issued, that there existed a cause of action against the defendant in favor of the plaintiffs. I sustain this position; the affidavit was made by Mr. White, who does not swear to any personal knowledge of the cause of action nor to any information received from the defendant himself, but only to hearsay from the plaintiffs and the clerk of defendant, without stating what they said, and to having seen a verified itemized copy of an account of plaintiffs against defendant. This is too general and indefinite, and is insufficient; hence the attachment is invalid on that ground also. Code, § 250.

The defendant's fourth and sixth grounds relate to the affidavit which was relied on by the plaintiffs to show fraud on the part of the defendant, and was made the basis of the warrant. This affidavit was made by L. Grollman. The first objection to it is, that the matters therein alleged, even if true, do not show fraud on the part of the defendant; and the second is, that those matters are not true. I sustain the first objection, for the reason that the said affidavit, standing alone, discloses nothing on the part of the defendant inconsistent with what he might find it reasonably necessary and proper to do at any time in the usual course of his business, and nothing to create suspicion in any unbiased mind. I sustain the second objection for the reason that the affidavits introduced by the defendant disprove many of the facts sworn to in the affidavit of L. Grollman, explain many others, and altogether show clearly that there was no fraudulent intent on the part of the defendant in what he did.

The fifth ground of the defendant is, that no copy, either of the affidavit or warrant, was ever served on the defendant. This, I think, sufficient of itself to vacate the attachment. So far as I know, our Supreme Court has not decided this question, but they strongly intimate in *Sharp* v. *Palmer*, 31 S. C., 445, that copies should be served; and such seems to be the practice in New York (92 N. Y., 256; 84 N. Y., 1).

Affidavits were offered in reply to defendant's affidavits. Objection was made to their introduction. I overruled the objection, but stated at the time that I would consider only so much thereof as was strictly in reply to the statements made in defendant's affidavits, and nothing that tended to supplement plaintiffs' case as first made, and I have done so.

It is, therefore, ordered, adjudged, and decreed, that the attachment herein be, and it is hereby, set aside and vacated. It is further ordered, that the defendant have leave to apply at chambers for any orders that may be necessary to carry out this order.

In the Hornik & Co. case, an additional point was thus decided: "The first point relates to the insufficiency of the undertaking, so did the first point in the Werner & Co. *v.* A. J. Lipsitz. My opinion in that case was that the undertaking was defective; and my opinion is the same in this case as to that point, but it is based on a different reason. In this case it appears that S. Rittenburg signed the firm name to the undertaking; this he could not do without proper authority, which nowhere appears. For this reason I consider the undertaking void."

In the O'Neill & Son case, an additional point was thus decided: "An examination of the undertaking shows that it was not signed by the plaintiffs. This is fatal to the validity of the attachment, and it must be vacated."

In the Grollman case, an additional point was thus decided: "In this case the undertaking was not under seal, nor was there a subscribing witness thereto, nor did the plaintiff serve copies of the warrant and of the affidavit on the defendant, and the affidavit on which the warrant was issued was insufficient, and hence the attachment is null and void and must be vacated, and it is so ordered."

In the Steffens & Sons' case, additional points were thus decided: "In regard to the first ground, I find that the undertaking is without seal, and in my opinion that is fatal to the validity of the attachment, and my reasons for this opinion will be found under this same objection, in the case of M.

Ferst's Sons & Co. *v.* A. J. Lipsitz, which was heard with this case. Another objection to the undertaking is, that the firm name was signed thereto by Geo. W. Steffens, jr., a member of the firm, and no authority appears for his so doing. If the bond or undertaking had been otherwise valid, and, therefore, under seal, such signing would be a nullity, for the reason that a member of a copartnership cannot sign the firm name to a sealed instrument without proper authority; no such authority is shown in this case, hence, for this reason also, the attachment in this case cannot stand.''

In the Ferst's Sons & Co. case, additional points were thus decided: ''The objections to the undertaking in this case raises four questions: 1, whether the firm name of the plaintiffs was properly signed thereto; 2, whether the power of attorney authorizing W. J. Verdier to sign said firm name should have been filed with the undertaking or other attachment proceedings; 3, whether there should have been a subscribing witness thereto; 4, whether there should have been a seal opposite each name in said undertaking. These questions did not arise in the case of Werner & Co. *v.* A. J. Lipsitz. I find that the firm name of the plaintiffs was signed to said undertaking by W. J. Verdier, Esq., as attorney in fact; I find, also, that W. J. Verdier, Esq., had a power of attorney in proper form authorizing him to sign said name to said bond. Yet, from the affidavit of Thomas Talbird, Esq., it appears that said power of attorney was not in the record a few days after the attachment, and hence I infer that it was not filed until after the attachment. This I consider an irregularity sufficient to vacate the attachment. The Supreme Court intimates very strongly in *Bank* v. *Stelling*, 31 S. C., 371, that a power of attorney to sign the undertaking should be filed with the proceedings; and if it should be filed at all, I see no reason why it should not be filed at the same time as the bond or undertaking. The next question in regard to the undertaking is, should there have been a subscribing witness? A witness is not essential. The bond or undertaking could not be recorded without the affidavit of a witness, but it is not such a writing as the law provides for recording, or requires to be recorded; hence a witness is un-

necessary to the creation of the paper. But since no paper of that kind can, under Rule 66 of the Circuit Court, be filed unless there is a subscribing witness, it is plain that a subscribing witness was necessary in this case, and the omission is, in my opinion, fatal. I do not think that Mr. Verdier would fill the requirement as a subscribing witness, he having merely witnessed his own writing. The next question is, should there have been a seal opposite each name; or, in other words, should those who signed the undertaking have used seals? I think that the 'undertaking' mentioned in the Code in connection with the provisions for attachments is synonymous with and means the same thing as 'bond.' In sections 260 and 261, and also in other sections of the Code, the word 'undertaking' and the word 'bond' are used synonymously. A seal was always necessary to a bond in this State; without a seal, a bond of this kind would be of no binding force. *Cantey* v. *Duren,* Harper, 434. However, I conclude that a seal was necessary, and its omission is fatal to the validity of the attachment."

*Messrs. Elliott & Elliott* and *W. J. Verdier,* for appellants.

*Mr. Thomas Talbird,* contra.

March 21, 1895. The opinion of the court was delivered by

MR. JUSTICE GARY. The above entitled causes, with one other in which no appeal has been taken, were brought in the Court of Common Pleas for Beaufort County, and attachments against defendant's property were issued. The attachments were all issued upon an affidavit in each case, made by L. Grollman, which will be set forth in the report of the cases. There was also in each case the affidavit as to cause of action. Thereafter, the defendant, upon affidavits, moved to vacate the attachments upon various grounds hereinafter mentioned. The plaintiffs offered in reply quite a number of affidavits. The affidavits being objected to as not in reply, his honor, Judge Townsend, who heard the motions, said he would hear the affidavits, and pass upon the question of their admissibility when considering the motions.

The presiding judge made orders setting aside the attach-

ments in all the cases? There was one case, that of John F. Werner & Co., represented by other counsel, in which the motion to vacate was not resisted, it being admitted that the undertaking was fatally defective; this case, however, the presiding judge used for writing his principal decision, and in all the other cases referred to his decision in this case, deciding also upon special points in the other cases. The orders of the presiding judge will accompany the report of the cases.

The first exception is as follows: "Because his honor erred in holding and so deciding, that the affidavits on which the attachments issued were insufficient to show ground for attachment." The affidavit is very long, and we will not set out at length the different facts therein alleged to sustain the attachments.

It not only appears upon the face of the affidavit, that the defendant committed certain acts from which a fraudulent intention might be inferred, but there are also admissions on the part of the defendant stated in the affidavit tending to prove such fraudulent intention. We say, "upon the face of the affidavit," because it is not within the power of the Supreme Court to decide upon the *credibility* of the affiant in such cases, nor whether the facts are true or untrue. These are matters for the Circuit Court. If, however, the facts alleged in the affidavit are true, then they were sufficient to sustain the attachments. The first exception is, therefore, sustained.

The second and third exceptions are as follows: "II. Because his honor erred in ruling out plaintiff's affidavits in reply, the defendant having moved upon affidavits. III. Because his honor erred in holding that the affidavits upon which the attachments were issued were disposed of and explained away by defendant's affidavits, and that defendant's moving affidavits showed that there was no ground for attachment, without having taken into consideration plaintiff's affidavits in reply." This court has not the power, as just stated, to consider the question as to the credibility of those making the affidavits. As hereinbefore stated, objection was made when plaintiffs offered their affidavits in reply, that such affidavits were not in reply, and, therefore, inadmissible. His honor allowed them to be read, and said he would pass upon the question of their

admissibility when he came to consider the motions on their merits. In the case of John F. Werner & Co. *v.* Lipsitz, in which his honor made his principal decision, he says: "Affidavits were offered in reply to defendant's affidavits, objection was made to their introduction. I overruled the objection, but stated at the time that I would consider only so much thereof as was strictly in reply to the statements made in defendants' affidavits, and nothing that tended to supplement plaintiffs' case as first made, and I have done so." It does not appear which affidavits were ruled by his honor to be in reply, and which were excluded. The plaintiff had the right to know which affidavits were allowed in reply, and the failure of the presiding judge to accord them such right is reversible error. These exceptions in so far as they complain of error on the part of his honor in the particulars just mentioned are sustained.

The fourth exception is as follows: "Because his honor erred in deciding that the nonservice of the affidavit and warrant of attachment upon the defendant was fatal, and sufficient ground for setting aside the attachment." The statute does not require such service, and this court certainly has no right to interpolate such provision into the statute. It is entirely a matter for the legislative department of the government. Section 253 of the Code provides that a true and attested copy of the attachment shall be delivered to the party whose *real estate* is attached, by the officer serving the same; and section 257 also provides for leaving a certified copy of the warrant of attachment with certain parties, where the property is *incapable of manual delivery*. These circumstances rather tend to sustain the doctrine found in the maxim: *"expressio unius, exclusio alterius."* We think the presiding judge committed error as complained of in this exception, and the exception is, therefore, sustained.

The fifth exception is as follows: "Because his honor erred in deciding that an undertaking on attachment must be under seal." The statute uses the word "undertaking" and not the word "bond." An "undertaking" is good without a seal, and this exception is, therefore, sustained.

The sixth exception is as follows: "That his honor erred in

holding that one member of a firm has no power to sign the firm name to an undertaking on attachment without special authority so to do, and that such authority must be shown." The undertaking does not require a seal, as we have just stated, and, therefore, his honor was in error. This exception is, therefore, sustained.

The seventh exception is as follows: "Because his honor erred in holding that where plaintiff's name is signed to the undertaking by an attorney in fact, under a proper power so to do, such power must be filed with the undertaking, at the time of the issuing of the attachment, and it is not sufficient that it be filed after the attachment has been issued." Again we find that there is no statutory requirement to this effect, and the presiding judge was in error. The judge, clerk of the court, or trial justice, before issuing the warrant, should have such facts before him as satisfy him that the undertaking is that of the *plaintiff*. Such officer may demand the authority by which the agent acts for the plaintiff, and where there is a power of attorney in writing, may have it filed with the undertaking, but the failure to do so is not fatal to the attachment. This exception is, therefore, sustained.

The eighth exception is as follows: "Because his honor erred in holding that there must be a subscribing witness to an undertaking on attachment." Although there is no statutory requirement to this effect, it is contended that it is a requirement of Rule 66 of the Circuit Court. Rule 66 is as follows: "Whenever a justice or other officer approves of the security to be given in any case, or reports upon its sufficiency, it shall be his duty to require personal sureties to justify. And all bonds and undertakings shall be duly proved by a subscribing witness, or acknowledged in like manner as deeds of real estate, before the same shall be received or filed." The limitation upon the power of the judges to make rules is that such alterations or additions be not inconsistent with any of the statutes of the State. The question, then, is whether or not said rule (66) is inconsistent with any of the statutes of the State. This rule is not simply a regulation of practice, but imposes a condition upon those suing out attachment proceedings. It is,

therefore, inconsistent with the statutes of the State, and this exception is sustained.

The ninth exception is as follows: "Because his honor erred in holding that the affidavit as to cause of action was insufficient in the case of M. Ferst's Sons & Co., Savannah Grocery Co., and Savannah Steam Bakery Co., in that same was made not by any member of firm, but upon information and belief by the attorney and traveling salesman respectively." The provision of section 250 of the Code is that the warrant may be issued "whenever it shall appear by affidavit that a cause of action exists against such defendant, specifying the amount of the claim and the grounds thereof," &c. There is no requirement that the affidavit must be made by any particular person, and, therefore, this exception is sustained.

The defendant's counsel gave notice that if the decision of the Circuit Judge could not be sustained upon any of the grounds upon which he placed it, they would insist that it should be sustained on the ground: "That there was no affidavit to show that the property that the defendant is alleged to have fraudulently disposed of, was not a part of defendant's homestead, and that such affidavit was necessary for the issuing of an attachment. And in the case of Waterhouse & Danner, that the Circuit Judge not having passed on the point made, that the name of the firm was not signed to the undertaking, they would insist on this point in the Supreme Court."

As to the first ground upon which the defendant relies, we do not think it can be sustained. The cases of *Martin* v. *Bowie*, 37 S. C., 102, and *Bradford* v. *Buchanan*, 39 *Id.*, 237, show that the right to a homestead in the property does not prevent proceedings to sell the property, but the homestead will be protected when it is made to appear that it exists. Of course, the party entitled to a homestead can not be deprived of such right.

In regard to the point as to the manner in which a partnership can sign an undertaking, we are of the opinion that in this case the undertaking was properly signed. There are two ways in which a partnership may bind itself by its signature to a contract not requiring a seal: 1st. By

simply the name of the partnership, as "Waterhouse & Danner," and 2d, by the signatures of the individual members composing the partnership, provided it appears in the instrument of writing that the intention is to bind the partnership. A copy of the undertaking is not set out in full, but we must presume that this intention sufficiently appears in the undertaking, in the absence of testimony to the contrary.

It is the judgment of this court, that the several orders appealed from be reversed.