## MUTUAL LIFE INS. CO. OF NEW YORK v. LANGLEY.

### (Circuit Court, D. South Carolina. May 8, 1906.)

1. REMOVAL OF CAUSES—BONDS—SUFFICIENCY.

Civ. Code S. C. 1902, §§ 599, 600, authorizing the giving of surety company bonds, declares that any foreign company, empowered by its charter to issue bonds or policies of suretyship, may, with the consent and approval of the Governor, Comptroller General, and Secretary of State, issue such bonds within the state. A removal bond tendered with a removal petition was signed by M. as attorney in fact for the foreign corporate surety, authorized to do business within the state, and was sealed with the seal of the corporation. It also contained an affidavit that the affiant saw the corporate seal of the company affixed, saw M. sign as attorney in fact for such surety, and witnessed the execution and delivery thereof as the act and deed of such surety. *Held*, that the bond was sufficient, though it was not accompanied by a power of attorney authorizing M. to sign the bond.

2. SAME—ORDER OF REMOVAL—NECESSITY.

Where a proper petition and bond for the removal of a cause to a federal court is filed in proper time with the clerk of the state court where the cause sought to be removed is pending, and a certified copy of the record is filed in the federal court, the latter court acquires jurisdiction without an order of the state court transferring the cause.

[Ed. Note.—For cases in point, see vol. 42, Cent. Dig. Removal of Causes, § 198.]

3. SAME—STATE COURT PROCEEDINGS—INJUNCTION.

Where a cause was properly removed to a federal court, but the state court erroneously denied a motion for an order transferring the cause, the federal court had jurisdiction on the application of the party removing the cause to grant an ancillary injunction restraining the opposite party from taking further proceedings in the state court, without violating Rev. St. § 720 [U. S. Comp. St. 1901, p. 581], forbidding a federal court from enjoining proceedings in a state court.

[Ed. Note.—For cases in point, see vol. 42, Cent. Dig. Removal of Causes, § 206.]

Mordecai & Gadsen, for complainant.
W. A. Holman, for defendant.

BRAWLEY, District Judge. The complainant above named filed its bill of complaint, duly verified, March 26, 1906, alleging, among other things, that Eliza J. Langley commenced an action against the Mutual Life Insurance Company of New York September 6, 1905, in the court of common pleas for the county of Lancaster in this state, on a policy of life insurance of $4,000. Thereafter, and within the time prescribed by the act of Congress in such case made and provided, the defendant filed a petition in the court of common pleas for Lancaster county for the removal of said cause to this court, and filed therewith a bond, which petition and bond was received by the clerk of the court of common pleas for the county of Lancaster September 22, 1905, and on October 14, 1905, the petitioner procured from the clerk of said court a transcript of the record, which said transcript was filed October 17, 1905, with the clerk of this court. The bill further alleges that thereafter, in due time, the Mutual Life Insurance Company filed its answer in this court, and that the same was served

upon the attorneys of Eliza J. Langley, and service thereof duly acknowledged by them; that at the next succeeding term of the state court application upon due notice was made to the presiding judge of said court for his approval of said petition and bond, and that said application was refused, on grounds which will be hereafter stated; that complainant immediately gave notice in open court and in writing of its intention to appeal from said order, but that counsel for Eliza J. Langley moved for an order for judgment by default against the complainant, upon the ground that the cause had not been removed into this court; yet, nevertheless, the presiding judge of said state court did proceed, and gave an order for judgment to be entered by default for the full amount claimed by the plaintiff, and that under the law and practice in the state courts a judgment will be entered, and execution will issue thereupon, and levy be made upon the property of the defendant in that cause. The prayer of the bill is that a writ of injunction be issued, restraining the said Eliza J. Langley, her agents, servants, or attorneys, from doing any other or further act or thing to avoid, oust, or ignore the jurisdiction of this court, and from the further prosecution of her suit in the state court.

Upon the filing of this bill, an order was entered requiring the defendant, Eliza J. Langley, to show cause in this court on the 4th day of April why a perpetual injunction should not issue enjoining and restraining her and her agents and attorneys from doing any act or thing to avoid the jurisdiction of this court over the suit or cause instituted in the court of common pleas for the county of Lancaster in the state aforesaid, copy of which order and of the bill of complaint, as appears by the return of the marshal, was served upon Eliza J. Langley, the defendant named, and upon T. Yancey Williams, Esq., D. Reece Williams, Esq., and Ernest Moore, Esq., attorneys for Mrs. Langley, and on the 4th day of April W. A. Holman, Esq., appeared for the parties named, and made a return to the rule. Argument was heard thereon, but, having been continuously occupied since that date in holding a term of the Circuit Court, I have been unable until now to arrive at a satisfactory conclusion.

The case has given me much concern, because comity and every consideration of propriety demands that all due respect should be paid to the state courts, and I am very unwilling to do anything which might have the appearance of grasping at jurisdiction which properly belonged to them; but the Constitution and laws of the United States give to nonresident defendants in all cases where the jurisdictional amount is involved the right to remove their causes into this court, and, if they have complied with the removal acts, and the jurisdiction of this court has therefore attached, my oath of office binds me to protect parties entitled to the jurisdiction of this court from any invasion of their rights. If the defendant in the state court has complied with the provisions of the statute relating to removal, the case was removed, and if it was within the jurisdiction of this court, the judgment of the state court was absolutely null and void.

The removal act (Act Aug. 13, 1888, c. 866, 25 Stat. 435 [U. S. Comp. St. 1901, p. 582]), in the first part of section 3 provides:

"That whenever any party entitled to remove any suit * * * may desire to remove such suit from the state court to the Circuit Court of the United States he may make and file a petition in such suit in such state court at the time or at any time before the defendant is required by the laws of the state or the rule of the state court in which such suit is brought to answer or plead to the declaration or complaint of the plaintiff, for the removal of such suit into the Circuit Court to be held in the district where such suit is pending, and shall make and file therewith a bond with good and sufficient surety for his or their entering in such Circuit Court on the first day of its then next session a copy of the record in such suit and for paying all costs that may be awarded by the said Circuit Court if said court shall hold that such suit was wrongfully or improperly removed thereto, and for the future appearing and entering special bail in such suit if special bail was originally requisite therein. It shall then be the duty of the state court to accept said petition and bond and proceed no further in such suit, and the said copy being entered as aforesaid in the Circuit Court of the United States, the cause shall then proceed in the same manner as if it had been originally commenced in the said Circuit Court."

No question is made that the petition in this cause, filed in due time, showed a case that was properly removable, and the transcript of the record has been duly filed here. The only question is whether "a bond with good and sufficient surety" was filed in the state court. It may be observed that the bond required by the statute is not a bond for the payment of any judgment that may be recovered, but the condition of the bond simply requires the party making it to file a copy of the record in this court, and for paying all costs that may be awarded by the Circuit Court if said court shall hold that such suit was wrongfully or improperly removed thereto. One of the conditions has already been complied with, and a copy of the record has been duly filed, and the only remaining condition is that the removing party shall pay the costs in the event that this court should decide that the case was improperly removed. The Hon. J. C. Klugh, presiding judge in the state court, in his order refusing to accept the bond, says:

"That it is not a bond good at law, and such as is required by the statute. It appears upon an inspection of the bond that the signatures to the bond are made by T. Moultrie Mordecai, styling himself the attorney in fact for the parties whose names are subscribed as principal and surety on said bond, but there is no power of attorney or other evidence in the record or before me to show authority by T. Moultrie Mordecai to make the signatures of the obligors upon the said bond."

He therefore dismissed the petition for removal, and thereafter entered a judgment by default against the defendant. The statute does not require that the bond should be signed by the party seeking the removal, and it has been repeatedly held that it may be signed by his attorney. It simply requires "a bond with good and sufficient surety." No objection is made to the sufficiency of the surety. The objection is that there was no power of attorney or other evidence to show authority by T. Moultrie Mordecai to make the signatures of the obligors upon said bond. The surety on the bond is the American Bonding Company of Baltimore, and on the face of it it is stated that this is a body corporate under the laws of the state of Maryland, duly authorized and licensed to do business in the state of South Carolina, and to become surety in the courts of the United States and of the state of South

Carolina. Sections 599 and 600 of the Civil Code of 1902 of South Carolina provides for the giving of bonds by surety companies, and that "any foreign company empowered by its home charter to issue bonds or policies of suretyship may by the consent and approval of the Governor, the Comptroller General and Secretary of State, issue said bonds in this state." No objection appears to have been made to the bond on this score. The sole objection stated in the order of the state judge is that it does not appear that T. Moultrie Mordecai had any authority to sign the bond. The original bond is not before me, having, of course, been filed with the clerk of the state court, but the copy purports to have the seal of the surety company, and the probate on the bond is as follows:

"State of South Carolina, Charleston County. Before me, the subscribing notary public, personally appeared E. M. Dibble, and made oath that she saw the corporate seal of American Bonding Company of Baltimore affixed to the then written bond, and that she saw T. Moultrie Mordecai, attorney in fact of said American Bonding Company, sign the same, and that she witnessed the execution and delivery thereof as the act and deed of said American Bonding Company of Baltimore.

"[Signed] E. M. Dibble.

"Sworn to before me this 21 day of September, 1905.

"William Austin, Notary Public. [Seal.]"

On the face of it, therefore, the bond seems to be regular. Corporations can only act through officers or agents, and where the corporate seal of the corporation is affixed, and the subscribing witness makes oath that she saw the corporate seal of the company affixed, and that she saw T. Moultrie Mordecai, attorney in fact of said company, sign the same, there is a presumption that the execution was duly authorized. Upon the hearing before me a power of attorney of the American Bonding Company appointing and authorizing T. Moultrie Mordecai to make, sign, and acknowledge as surety any and all bonds, obligations, and undertakings required in judicial proceedings in any of the courts of the state of South Carolina and in the United States courts was produced, bearing upon its face the statement, under the hand of M. R. Cooper, Secretary of State, that the same was recorded in Miscellaneous Record Book, page 659, M. M. M. M. M., and it was stated upon the hearing that the same had been offered for the inspection of Judge Klugh, but this circumstance does not affect my judgment, which is that the bond of the surety company, signed as this bond was signed, with the corporate seal attached, is on the face of it a sufficient bond under the removal act. This, of course, would not prevent the surety company, or any party interested from showing by matter dehors the record that the attorney in fact was not in reality authorized to sign bonds for the company, and that the corporate seal was improperly attached; but that would raise a question of fact which must be decided in this court. In a late case decided by the Supreme Court of South Carolina (Furness v. Calhoun, 70 S. C. 537, 50 S. E. 194), a warrant of attachment had been issued by the clerk of the court for Beaufort county against the defendant as a nonresident, and under it certain real estate in that county was attached. The undertaking was signed: "Christopher Furness and J. H. Wellsford, by Thomas

Talbird, Their Attorney in Fact," and attached to the undertaking was a telegram addressed to Thomas Talbird, signed by W. S. Monteith, attorney: "Plaintiffs authorize you to sign undertaking on their behalf." W. S. Monteith and Thomas Talbird were attorneys of record of the plaintiffs. In August, 1904, the defendant gave notice of a motion to dissolve the attachment, upon the ground that such undertaking was not signed by the plaintiffs, nor by any one thereunto authorized by them. Judge Klugh dissolved the attachment upon the ground stated, and upon appeal to the Supreme Court that court says (page 538 of 70 S. C., page 195 of 50 S. E.) :

"The requirement of the Code (section 251) is that the officer before issuing the attachment 'shall require a written undertaking on the part of the plaintiff, with sufficient surety. Three things, therefore, are essential requirements: (1) The undertaking must be in writing; (2) on the part of the plaintiffs; (3) with sufficient surety. The question here is whether the second requirement has been made.' The case of Bank v. Stelling, 31 S. C. 369, 9 S. E. 1028, shows that an undertaking to appear on the part of plaintiff must be signed by the plaintiff or in his name by his authorized agent. The undertaking need not be under seal, and the failure to file the authority to sign the plaintiff's name thereto is not fatal to the judgment. Grollman v. Lipsitz, 43 S. C. 340, 21 S. E. 272. The general rule is that, where a seal is not necessary to the instrument, a parol appointment to sign is sufficient, in the absence of a statute to the contrary. In Ferst Sons v. Powers, 58 S. C. 409, 36 S. E. 749, the court held that the name of plaintiff could be signed by persons named as agents, under the authority of telegrams which were attached to the undertaking. This does not mean that such telegram must be attached, because, as we have seen, it is not essential to file any written authority of the agent."

The judgment of the circuit court was therefore reversed.

The next question is whether an order of the state court was necessary in order to effect the removal. It is not disputed that the defendant, being a nonresident, was entitled to remove the case to the federal court, and that the petition filed within due time stated sufficient grounds for removal, and that a certified copy of the record has been filed in this court. Foster's Federal Practice (section 365e) says:

"No order of the state court is essential to the removal. An order of the state court denying the prayer of the petitioner for removal has been held to be a breach of comity."

Mr. Justice Field on circuit, in Wilson v. Western Union Telegraph Company (C. C.) 34 Fed. 562, says:

"The statute makes the removal upon the filing of the petition with the necessary bond. The order of the state court directing the removal would have been a proper proceeding; it would have been record evidence of the court's acceptance of the bond, and of its acquiescence of the transfer of the action from its jurisdiction; but its refusal to make the order could not take from the circuit court its rightful jurisdiction."

In Noble v. Mass. Ben. Association (C. C.) 48 Fed. 337, Judge Wallace says:

"The statute is satisfied when the petition and bond are filed with the official custodian of the records of the court. The statute requires him to make and file a petition and bond in the suit in the state court. It does not, in terms, require him to make any other presentation of them to the court, and, if he moves the consideration of the court or of the judge upon them, his rights are not enlarged or abridged by the action of the court or judge. The

statute requires the state court to 'accept' the petition and bond, and proceed no further in the suit. As is pointed out by Justice Field in Wilson v. Telegraph Company, no order of the state court respecting them is contemplated to transfer the jurisdiction of the action. * * * Certainly, it is a decorous practice for the removing party to present a petition and bond to the judge of the state court, and obtain a formal acceptance of the court. It is also the safer practice, because he can thereby have an opportunity to obviate any remedial objections which are suggested to their sufficiency in case the court refuses to accept them; but it is not indispensable, and when they are brought to the attention of the court in the manner prescribed by the statute, by filing them in the suit, the court can proceed no further if they are sufficient. When filed they become a part of the record in the cause, and the court is judicially informed that its power over the case has been suspended."

In Eisenmann v. Delamar Gold Mine Co. (C. C.) 87 Fed. 248, Judge Hawley says:

"The law is now well settled, although a few stray cases may be found to the contrary, that when the petition calling for removal is made in the state court its jurisdiction ends, and no order of the state court for removal is necessary; in other words, upon the filing of the petition for removal, accompanied by a proper bond, the suit being removable under the statute, jurisdiction of the federal court immediately attaches in advance of the filing of a copy of the record, and whether that court should retain jurisdiction is for it and not for the state court to determine."

In Loop v. Winter's Estate (C. C.) 115 Fed. 362, there was an application to remand the case, because there was no seal affixed to the paper called the bond, and that for that reason it was not a legal bond. Judge Hawley says:

"It has been held that the omission of the seal of a removal bond is a mere formal defect, which can be cured by amendment. The omission of the seal furnishes no sufficient ground to justify the court in remanding the case. Counsel for plaintiffs claims that there was no order for removal made by the state court. None is necessary."

In Groton Bridge & Manufacturing Co. v. American Bridge Co., (C. C.) 137 Fed. 284, Judge Ray says:

"But should the court arbitrarily refuse to approve the surety, it cannot be doubted that the removing party would have the right to file a bond and petition, procure the filing of the record on removal, and proceed in the Circuit Court of the United States. The remedy of the plaintiff in such a case would be to move to remand and show the insufficiency of the surety, and that the judge of the state court was justified in refusing to approve the bond."

In the "Removal Cases," 100 U. S. 457, 25 L. Ed. 593, the court was considering a case where one of the persons who signed the bond as a surety was an attorney of the court, which was forbidden by the laws of Iowa, and says:

"If the state court refuses to accept the bond offered by a petitioner for removal, which has good and sufficient surety in law, it is error that may be reviewed here. That court has no discretion in such a matter. Its action is governed by fixed rules."

In Kern v. Huidekoper, 103 U. S. 492, 26 L. Ed. 354, the court says:

"It has been expressly held by this court that when a case has been properly removed from a state into a United States court, and the state court still goes on to adjudicate the case, against the resistance of the party at whose instance the removal was made, such action on its part is a usurpation.

* * * After the filing in the United States Circuit Court on July 27, 1877, of the record of the proceedings in the state court, the latter lost all jurisdiction over the case, and, being without jurisdiction, its subsequent proceedings and judgment were not, as some of the state courts have ruled, simply erroneous, but absolutely void. * * * Notwithstanding the refusal of the state court to make an order for the removal of the case, the defendants in error, within the time prescribed by the statute, filed a transcript of the record of the state court in the Circuit Court of the United States. This invested the latter court with full and complete jurisdiction of the case. * * * If the cause is removable, and the statute for its removal has been complied with, no order of the state court for its removal is necessary to confer jurisdiction on the court of the United States, and no refusal of such an order can prevent that jurisdiction from attaching."

In Railroad Co. v. Koontz, 104 U. S. 14, 26 L. Ed. 643, the Supreme Court says:

"It is also a well-settled rule of decision in this court that when a sufficient case for removal is made in the state court, the rightful jurisdiction of that court comes to an end, and no further proceedings can properly be had there unless in some form its jurisdiction is restored. Gordon v. Longest, 16 Pet. (U S.) 97, 10 L. Ed. 900, and other cases. The entering of a copy of the record in the Circuit Court is necessary to enable that court to proceed, but its jurisdiction attaches when under the law it becomes the duty of the state court to proceed no further."

From this brief review of the decisions it seems to be clear that when a petition has been filed in due time in the state court, which on its face shows the right to remove, and a bond has been filed there, and a copy of the record is filed in the United States Circuit Court, the removal under the statute is effected, and the jurisdiction of this court at once attaches, and all questions affecting such jurisdiction must be made here. The main object of the bond in a case like this is to provide against unnecessary delay of the party seeking the removal in filing a transcript of the record in the United States court, and to secure the costs in the event that the case is remanded. I am of opinion that upon the face of it the bond is sufficient for that purpose, but this does not preclude the parties concerned from making any motion which may be advised to impeach the validity of said bond. From this conclusion it follows that the jurisdiction of the state court has terminated, and it remains, therefore, only to consider whether the injunction prayed, restraining said parties from further proceeding in the state court, should be granted.

In French, Trustee, v. Hay, 22 Wall. (U. S.) 252, 22 L. Ed. 857, the court considered a case of this character. French had commenced a suit in the state court which had been removed to the United States court. After such removal he obtained a decree in the state court, and sent the transcript of it into Pennsylvania, and brought suit on the judgment in the latter state, and it was objected to a bill filed in the Circuit Court of the United States for Virginia, praying for an injunction restraining French from suing on such transcript, which had been annulled in Virginia, that the bill was, in effect, to restrain the proceedings of the state court, contrary to the inhibition of the judiciary act, which enacted: "Nor shall a writ of injunction be granted to stay proceedings in any court of the state." The Supreme Court says:

"This bill is not an original one; it is auxiliary, and dependent in its character, as much so as if it had been a bill of review. The court, having jurisdiction in persona, had power to require the defendant to do or to refrain from doing anything beyond the limits of its territorial jurisdiction which it might have required to be done or omitted within the limits of said territory. Having the possession and jurisdiction of the case, that jurisdiction embraced everything in the case, and every question arising which could be determined in it, until it reached its termination. when the jurisdiction was exhausted. While the jurisdiction lasted, it was exclusive, and could not be trenched upon by any other tribunal. * * * If it could not be given in this case, the result would have shown the existence of a great defect in our federal jurisprudence, and have been a reproach upon the administration of justice."

In Dietzsch v. Huidekoper, 103 U. S. 494, 26 L. Ed. 497, plaintiffs in a replevin suit, which had been removed to the United States court, commenced an action upon the replevin bond in the state court of Illinois. A bill was filed praying an injunction to restrain them in the prosecution of such suit, and the court held that, as Dietzsch had been a party to the action of replevin which had been pending in the United States Circuit Court, that court had jurisdiction of his person, and the bill was sustained upon the authority of French v. Hay. Abeel v. Culberson (C. C.) 56 Fed. 329; Gardner v. Bank, 67 Fed. 833, 16 C. C. A. 86, and Central Trust Company v. Western Carolina Railroad Company (C. C.) 89 Fed. 25, may be cited as illustrations of the doctrine, but it is useless to multiply authorities, as the Supreme Court of the United States has in a very recent case (Traction Co. v. Mining Co., 196 U. S. 239, 25 Sup. Ct. 251, 49 L. Ed. 462) stated that, among the principles settled by former adjudications:

"It is competent for the Circuit Court, by a proceeding ancillary in its nature, without violating section 720 of the Revised Statutes [U. S. Comp. St. 1901, p. 581], forbidding a court of the United States from enjoining proceedings in a state court, to restrain a party against whom a cause has been legally removed from taking further steps in the state court."

The return to the rule and the argument of counsel make no question on this point. For cause why the injunction should not issue, the return states that the complainant has an adequate and complete remedy at law to correct the error, if any, made by the state court by appeal to the Supreme Court of the state, and from there by writ of error to the Supreme Court of the United States; and for further cause it is stated that there was nothing in the record showing that T. Moultrie Mordecai, who signed the bond as attorney in fact, had authority to make and execute the bond on file. The alleged defect in the bond has been already considered, and it has been held that the affixing of the corporate seal is, of itself, prima facie evidence that the attorney in fact was duly authorized to execute it. If, as was held by the Supreme Court of South Carolina in Furness v. Calhoun, supra, an undertaking in an attachment proceeding, which has been decided to be jurisdictional, may be signed by attorneys or agents, and it is not essential to file any written authority of the agent, surely it cannot be held that the bond of a corporation, with its corporate seal affixed, is on the face of it invalid because the written authority of the attorney does not appear. In this case the main condition of the bond, to wit, that the removing party would file a copy of the record in the Circuit Court of

the United States, had already been performed, for the record had already been filed here, and the only remaining condition was that the defendant would pay the costs in the event that the cause was remanded to the state court. If such bond was defective in form, it was in the power of the court to allow an amendment to remedy the alleged defect, and to permit the filing of the power of attorney. Judge Dillon, in the Removal of Causes (section 134), says:

"The formalities prescribed by the act of 1875 are not conditions precedent to the jurisdiction of the federal courts, and a defect in the bond required by that act may be cured by the substitution of a new bond upon motion in the federal court to amend."

The jurisdiction of the federal courts depends upon the citizenship of the parties and the subject-matter of the controversy, whether it is one arising under the Constitution and laws of the United States between citizens of different states, of the character and amount described in the statute. The filing of the petition and bond are the instrumentalities devised by Congress to facilitate the removal of the cause from one court to the other, and where it clearly appears, as it does here, from the petition, that the defendant company had the constitutional right to have its case transferred, and has done what the law required it to do to effectuate the removal, it will be going very far to hold that a mere omission to comply with some provisions of the statute, directory in their nature and not jurisdictional, should be fatal to its rights, and that such defect could not be cured by an amendment either in the state or in the federal court. The Supreme Court of the United States in Kinney v. Columbia Savings Association, 191 U. S. 78, 24 Sup. Ct. 30, 48 L. Ed. 103, says:

"A petition and bond for removal are in the nature of process. They constitute the process by which the case is transferred from the state to the federal court. Congress has made ample provision for the amendment of process"— quoting sections 948 and 954, Rev. St. [U. S. Comp. St. 1901, pp. 695, 696].

In that case the petition for removal was defective, but, inasmuch as diverse citizenship existed, and the amount in controversy was over $2,000, it was held that the defect in the petition could be amended. The revelations of the last year concerning the misconduct and malversation of some of the officials of the Mutual Life Insurance Company have aroused universal resentment and reprobation, but the company itself is not an outlaw, and cannot be deprived of the right to defend itself in that forum to which under the laws of the country it is entitled to remove its cause.

The injunction prayed for in the bill will be granted.