FINE *et al. v.* SAUL *et al.*

**310**

No. 11500. November 11, 1936.

*Little, Powell, Reid & Goldstein,* for plaintiffs in error.

*A. S. Grove, Heyman & Heyman,* and *Neely, Marshall & Greene,* for defendants.

GILBERT, Justice. A. D. Fine and Mrs. Jacob Silver, beneficiaries of a trust estate created by the will of their mother, Mrs. Gertrude Fine, filed a petition in equity against J. Saul, one of the trustees, and Travelers Insurance Company. The allegations of the petition, other than those shown in the opinion, are substantially as follows. The plaintiffs' mother, Mrs. Gertrude Fine, died in the year 1929, and her will was probated in the court of ordinary of Fulton County on November 4, 1929. The plaintiffs were minors at the time of the death of their mother. The will provided that the trustees and executors should, as trustees, hold the property until each child should become twenty-seven years of age; that they should use the income and, if necessary, the corpus of the property for the children's support and education. It authorized the executors and trustees to sell any of the property and to reinvest and hold the proceeds without any orders of any court. It named J. Saul, Hyman S. Jacobs, and H. Saul as "executors of her will" and as "trustees" for her children, and provided that they should not be required to give bond or file reports or returns of any kind to any court, or to obtain any orders of any kind in the management, sale, disposition, or settlement of the estate (item 8). It did not specifically authorize them to lend on real estate.

The defendant having interposed demurrers general and special, and the Travelers Insurance Company having filed an answer setting out the claim of J. Saul against that company, and that Abe Saul and Herbert Saul, sons of J. Saul, claimed the title to this fund, the plaintiffs offered to amend their original petition in the following respects: (1) They sought to make Hyman S. Jacobs and H. Saul, the other executors and trustees, and Abe Saul and Herbert Saul, the claimants to the fund, parties defendant. They alleged further that the executors had discharged their duties as executors, and were now holding the property in their hands as

trustees, having fully discharged all of the liabilities of the estate of Gertrude Fine, the testatrix, other than the liability to these plaintiffs. (2) Alleging themselves to be the sole beneficiaries of the trust estate, they set out in detail the equitable grounds for relief, and alleged that complete relief could not be obtained at law. The other executors were related to J. Saul in a designated manner, and had refused to bring the action. Further, these executors were themselves secondarily liable. While they alleged the right to file this suit in their own names against the executors and trustees, they set out the uncertainty regarding that title; and that while their possession of a legal title sufficient to bring an action at law was doubtful, equity had jurisdiction of such an action, and that the same could proceed in the name of the executors as defendants. Such suit could be brought only in equity. They alleged, as further equitable grounds for the maintenance of the action, that the Travelers Insurance Company had disclosed the claim of Abe Saul and Herbert Saul to the res involved; and in order that equity might have all parties before it to do complete justice, they sought to make parties, the claimants to the fund, as well as all of the executors. They alleged further that if an action could not be maintained by them in their own names, or in the names of the other executors suing for their use, then the trust should not fail for want of a trustee, and a court of equity should appoint a new trustee, or, in the alternative, a receiver. They prayed for an accounting between themselves and the trustee, J. Saul, for the default charged in the original petition and in the amendment, and that the court retain jurisdiction of the trust estate until they reached the age of twenty-seven. On objections the court disallowed the amendment, and thereafter sustained the demurrer and dismissed the petition. To these rulings the plaintiffs excepted.

■ As we construe the plaintiffs' pleadings in their entirety, there is no effort to administer an estate. Therefore the allegations and prayers for equitable relief do not encroach upon jurisdiction of the court of ordinary. The court of ordinary never had, and never could exercise, jurisdiction to enforce the terms of the trust imposed by the deceased upon the defendants. Under the terms of the will two separate duties were imposed upon J. Saul, H. Saul, and Hyman S. Jacobs: One was the duty imposed upon

them as executors to faithfully administer the estate of their testatrix according to the terms of the will and the law applicable thereto. The other duty was to hold the property entrusted to them as trustees and to faithfully carry out the trusts imposed. *Sanders* v. *Hinton,* 171 *Ga.* 702 (156 S. E. 812). This is a proceeding seeking equitable relief against testamentary trustees for a breach of duty. In so far as the record discloses, there is no duty left unperformed by the defendants with reference to the administration of the estate. But if there is any such, the decision of this case will not conflict with such duty or duties.

■ Equity has jurisdiction of trusts and trustees such as are here involved. "Trusts of every kind, not generally cognizable at law, are peculiar subjects of equity jurisdiction. Civil Code, § 3779 [1933, § 108-117]. If the trustee omits to act when required by duty to do so, or is wanting in necessary care and diligence in the due execution of the trust which he has undertaken, a court of equity will interpose. *Jones* v. *Dougherty,* 10 *Ga.* 273. The relief granted, in cases of trust, will always be so molded and framed as to render the trust effectual, and secure the best interests of all parties. Civil Code, § 3783 [1933, § 108-118]. To preserve a trust estate, to supervise its management, to hold the trustee to the line of duty, for the purpose of preserving its corpus for the benefit of the beneficiaries, is an elementary branch of equity jurisprudence. *Johns* v. *Johns,* 23 *Ga.* 31; *Knight* v. *Knight,* 75 *Ga.* 386 (3). The judge of the superior court of each county has power, either in term or at chambers, to remove and appoint trustees. Civil Code, § 3744 [1933, § 108-303]. When a court of equity obtains jurisdiction for one purpose, it will proceed to give full relief to all parties with reference to the subject-matter of the suit, where it has jurisdiction for that purpose. § 4522 [1933, § 37-105]." *Clark* v. *Clark,* 167 *Ga.* 1, 18 (144 S. E. 787). See *Citizens & Southern National Bank,* v. *Clark,* 172 *Ga.* 625 (158 S. E. 297).

■ The trustee, J. Saul, with the assent of the other trustees, H. Saul and Hyman S. Jacobs, borrowed $15,000 in the name of J. Saul & Company, dominated by said J. Saul. The note was secured by a lien on real estate, but the security deed was not recorded. The property was burned, and the trustees permitted the loss to be paid to J. Saul, who collected $10,000. All of said

transactions are alleged to be fraudulent. After the destruction by fire, the land was worth not exceeding $2500. J. Saul is insolvent, but has recently obtained a judgment against the Travelers Insurance Company for $6470, and the petitioners prayed that J. Saul be restrained from disposing of this property or from assigning it. J. Saul's cotrustees, though requested by petitioners, will not act to protect them as beneficiaries of the trust. A court of equity will seize choses in action in the hands of creditors of J. Saul and apply the same to the debt owed by him to his cestuis que trust. This application of a general rule, of course, does not attempt to adjudicate issues where third parties may have lawfully acquired rights affecting such property. The property sought to be impounded was the only property available to answer the default. They alleged that they were without remedy at law, and that unless a court of equity would aid them they would lose the amount of money withdrawn from the estate of their mother, of which trust estate they were the sole beneficiaries. It is insisted, since it is not alleged that the other two trustees are not financially able and willing to make payment of the trust funds when payment is due, or that J. Saul can not himself pay at the termination of the trust, that no cause of action is set out. That contention ignores the alleged facts that the trustees made the loan to one of their number, and now, after the fire loss and the bankruptcy mentioned above, fail and refuse to take action to secure the beneficiaries of the trust. The testatrix reposed the greatest confidence in the trustees. The will provided that they be relieved of bonds and of reports, of the necessity for obtaining orders of any court for sale or investment of the trust funds. Nevertheless, "Trustees having possession of trust property are bound to ordinary diligence in the preservation and protection of the same." Code, § 108-402. "The trustee shall not use the trust funds to his own profit. He shall be liable to account for all such profits made." § 108-429. The statutes just quoted, and others found in the Code on the same subject, clearly demonstrate the firm purpose of our lawmakers to protect trust estates. The decisions of our courts, as well as all of those of other States, show a consistent course in applying those laws. In *Clark* v. *Clark*, supra, the court said: "The trustees have no personal interest in this trust. They are only entitled to such compensation as the law gives them for

their services in properly executing the same. Relatively to removal of a trustee having no interest in the trust, the welfare of the beneficiaries constitutes the chief matter for consideration. Laughlin v. Wells Blg. Co., 179 Wis. 56 (190 N. W. 899). 'The trustee must not use the trust funds to his own profit.' Civil Code, § 3767. It is a fundamental rule that a trustee can make no profit for himself out of the trust estate. This principle is so essential to the honest and proper management of trust property that the trustee is never encouraged to take risks with it for his own aggrandizement. On the contrary, he is restrained from so doing by being compelled, if his venture turns out unfortunately, to account to the beneficiary under the trust for the full value of what is lost. If the venture be successful, he is required to turn over his gain to the beneficiary of the fund embarked in the enterprise. *Caruthers* v. *Corbin*, 38 *Ga.* 75 (5); *Roberts* v. *Mansfield*, 38 *Ga.* 452, 458. The current of Georgia policy, both legislative and judicial, runs steadily in one direction and to one point, that is, that no trustee shall have the opportunity or be led into the temptation to make profit out of the business of beneficiaries entrusted to his care, by bargaining with himself, directly or indirectly, in respect to that business. *Mayor &c. of Macon* v. *Huff*, 60 *Ga.* 221, 228. Trustees can never be allowed to derive a personal advantage from the use of the trust property. *Rogers* v. *Dickey*, 117 *Ga.* 819 (45 S. E. 71). They can not make a personal profit in dealing with trust property. *Dowling* v. *Feeley*, 72 *Ga.* 557; *Dorsett* v. *Garrard*, 85 *Ga.* 734 (11 S. E. 768); *Bourquin* v. *Bourquin*, 120 *Ga.* 115, 118 (47 S. E. 639). A testamentary trustee must act, not only for the benefit of the trust estate, but also in such a way as not to gain any advantage, directly or indirectly, except such as the law specifically gives him; and he owes an undivided duty to the beneficiary, and must not place himself in a position where his personal interest will conflict with the interest of the beneficiary. Gould v. Gould, 178 N. Y. S. 37 (108 Misc. 42); Pyle v. Pyle, 137 App. Div. 568 (122 N. Y. Supp. 256), affirmed, 199 N. Y. 538 (92 N. E. 1099). As long as the confidential relation lasts, the trustee owes an undivided duty to the beneficiary under the trust, and can not place himself in a position which would subject himself to conflicting duties, or expose him to the temptation of acting contrary to the

best interests of the cestui que trustent. 3 Pomeroy's Equity Jurisprudence, § 1077. Beneficiaries of a trust are entitled to have it administered by trustees entirely at the service of the trust and above suspicion. Crummey v. Murray, 224 N. Y. S. 49 (130 Misc. 378). The purpose of this rule is to require a trustee to maintain a position where his every act is above suspicion, and the trust estate, and it alone, can receive, not only his best services, but his unbiased and uninfluenced judgment. Whenever he acts otherwise, or when he has placed himself in a position that his personal interest has or may come in conflict with his duties as trustee, or the interests of the beneficiaries whom he represents, a court of equity never hesitates to remove him. In such circumstances the court does not stop to inquire whether the transactions complained of were fair or unfair; the inquiry stops when such relation is disclosed. Munson v. Syracuse &c. Ry. Co., 103 N. Y. 58 (8 N. E. 355); Pyle v. Pyle, supra; Elias v. Schweyer, 40 N. Y. Supp. 906 (17 Misc. 707); 27 Am. & Eng. Enc. Law (1st ed.), 194." If a trustee borrows the money of his cestuis que trust from his cotrustees, the transaction will be closely scrutinized; and if, as alleged, the transaction is fraudulent or if it constitutes a breach of duty, all trustees may be removed and full equitable relief administered.

Headnotes 4, 5, and 6 need not be elaborated.

*Judgment reversed. All the Justices concur.*