29809. BAILEY *et al. v.* WALDRUP *et al.*

DECIDED MARCH 9, 1943. REHEARING DENIED MARCH 26, 1943.

*Joel B. Mallet, Ernest M. Smith,* for plaintiffs in error.
*W. E. Watkins, J. R. Cumming, Christopher & Futral, S. B. Wallace,* contra.

SUTTON, J. Quincy B. Waldrup filed her application in the court of ordinary of Butts County, asking to be appointed administratrix de bonis non of the estate of Mrs. Emma B. Maddox, deceased. She attached to her application a writing wherein a majority of the next of kin of the deceased, and who were a majority of those interested as distributees of the estate, selected the applicant as the person to be appointed administratrix. A caveat to the application was filed by Kirby Cheek Maddox, in which he claimed that he was the adopted son of the said deceased and as such was entitled to her estate, and asked that J. L. Bailey Sr. be appointed as administrator. He alleged that Quincy B. Waldrup was inexperienced and incapable of managing and administrating said estate, and charged that she had colluded and conspired with her brother, W. E. Waldrup, who was originally appointed administrator and who had been removed for waste and mismanagement, in preventing and obstructing the formal adjudication of caveator as sole heir of the deceased, and in preventing the administration and distribution of the estate to the persons entitled thereto. J. H. Jackson and Henry W. Jackson, two of the nephews of Mrs. Emma B. Maddox, selected in writing J. L. Bailey Sr. as their choice to be appointed administrator, and their attorney at law appeared for them in the court of ordinary and adopted the caveat of Kirby Cheek Maddox. J. L. Bailey Sr. was appointed administrator at the hearing in the court of ordinary. On appeal to the superior court a verdict and judgment were rendered appointing Quincy B. Waldrup administratrix de bonis non of the estate of Mrs. Emma B. Maddox. The exception is to the overruling of the caveator's motion for new trial.

■ The contention of counsel for the plaintiff in error that Kirby Cheek Maddox was the adopted son of Mrs. Emma B. Maddox and had the right to select J. L. Bailey Sr. to be appointed as administrator of her estate can not be sustained, as it was conceded that he had not been legally adopted, and no judgment or decree establishing virtual adoption was claimed or shown. See *Crawford* v. *Wilson,* 139 *Ga.* 654 (78 S. E. 30, 44 L. R. A. (N. S.) 773).

■ It appears from the evidence that Mrs. Emma B. Maddox had two sisters, Mrs. Waldrup and Mrs. Jackson, who both predeceased her. Mrs. Waldrup left ten children, and Mrs. Jackson

left two children; and these nieces and nephews, all sui juris, were the next of kin and the sole heirs at law of Mrs. Maddox. Nine of the Waldrup children selected in writing their sister, Quincy B. Waldrup, as their choice as administratrix of the estate of Mrs. Maddox, and the two Jackson children selected J. L. Bailey Sr. as their choice to administer said estate. The Code, § 113-1202, provides: "In the granting of letters of administration of any kind, the following rules shall be observed, the applicant being required, in all cases, to be of sound mind, and to be laboring under no disability. . . If there shall be several of the next of kin equally near in degree, the person selected in writing by a majority of those interested as distributees of the estate, and who are capable of expressing a choice, shall be appointed." See *Mattox* v. *Embry*, 131 *Ga.* 283 (62 S. E. 202) ; *Pate* v. *Pate*, 28 *Ga. App.* 798 (2) (113 S. E. 50). The evidence showed that the applicant, Quincy B. Waldrup, was at the time of the trial, and had been for a period of eight years, employed as a bookkeeper in a bank in Griffin; where she lived, and it was not shown that she was laboring under any disability that would prevent her from acting as administratrix of said estate. Under the law and the evidence, the jury was authorized to find in favor of the application of Quincy B. Waldrup, appointing her administratrix de bonis non.

■ Grounds 1, 2, 3, 4, 5, and 6 of the amendment to the motion for new trial, which complain that the court refused to allow the applicant, Quincy B. Waldrup, to answer on cross-examination certain questions, as to whether she thought everything that was paid by a former administrator of said estate was all right, as to what she testified in the court of ordinary as to paying a judgment in an equity case, and as to whom she offered, on the trial then in progress in the superior court, as surety on her bond, show no error under the facts of the case. Grounds 7, 8, 9, and 10, alleging that the court, in the presence of the jury, intimated or expressed an opinion as to what had or had not been proved, and ground 13 alleging that the court expressed an erroneous opinion as to what the law is with reference to the eligibility of the applicant to be appointed administratrix, are without merit. Grounds 11 and 11-A, assigning error on the refusal of the court to allow in evidence the petition and answer in an equity case, and ground 12 complaining of the refusal to allow in evidence the written selection by Kirby

Cheek Maddox of J. L. Bailey Sr., to be appointed as administrator, are without merit and show no error. Grounds 14, 15, 16, 17, and 18, alleging that the court erred in charging the jury as therein complained of, show no error. The court did not err in overruling the motion for new trial.

*Judgment affirmed. Stephens, P. J., concurs.*

FELTON, J., dissenting. Quincy B. Waldrup filed her application for appointment as administratrix de bonis non of the estate of Mrs. Emma B. Maddox, alleging that W. E. Waldrup had been appointed but had been discharged. Attached to the petition was a selection by a majority of the heirs at law of Mrs. Maddox, which stated that the ordinary of Butts County had declared W. E. Waldrup unfit for the place as administrator of the estate. Kirby Cheek Maddox, an alleged adopted son of Mrs. Maddox, filed a caveat to the appointment of Quincy B. Waldrup, in which two of the next of kin of the deceased joined. The grounds of the caveat contained the following: "That Quincy B. Waldrup is wholly and utterly incompetent for such trust. Caveator charges that said applicant, Quincy B. Waldrup, is inexperienced and incapable of managing said estate or properly administering the same; and caveator further charges that, if appointed, said applicant would turn over the entire management and administration of said estate to employed counsel or agents who would not, as a matter of law, be entitled to such appointment; and caveator charges that said applicant . . has colluded and conspired with her brother, W. E. Waldrup, originally appointed as administrator on said estate, and who was, on October 4th, 1938, removed for waste and mismanagement of said estate and in obstructing the due administration of said estate and in obstructing the process of this court, many of the circumstances thereof being shown by the records of this court and of the superior court of said county, and has colluded and conspired with said W. E. Waldrup and their other brothers and sisters in preventing and obstructing the formal adjudication of caveator herein, . . as sole heir of said Mrs. Emma B. Maddox, and in preventing and obstructing the administration of said estate and its distribution to the person or persons entitled thereto; and that, instead of seeking to assist in conserving the assets of said estate, she has colluded and conspired in causing and has condoned the wasting of said estate by the unnecessary and unauthorized and,

as caveator charges, illegal expenditure of the funds of said estate in the amount of several thousand dollars or some other large sum."

The original caveator and the two heirs who joined with him in the caveat selected J. L. Bailey Sr., to be appointed as administrator. Quincy B. Waldrup testified, in part: "We first selected W. E. Waldrup, and all the way through we were satisfied with that selection. He was removed as administrator. I stated in the court of ordinary that I agreed on everything he did so far as I knew—it was left up to them what was right. I mean by 'they' Mr. Waldrup and Mr. Wallace. As to doing what Mr. Wallace said to do, we left it up to Mr. Wallace; and as long as he is right, if I am appointed as administratrix I intend to do what he tells me to do. If he is right, that is the only thing I have to do, to do what he tells me. In answer to the question that I stated down there in the ordinary's court I had agreed to everything that Mr. Waldrup had done because Mr. Wallace had advised him, so far as I knew, because it was left up to the two. So far as I know I agreed with everything that Mr. Waldrup had done. I have never made any complaint about how W. E. Waldrup was running the estate, and I still don't make any complaint about his management of the estate. I testified in the ordinary's court I filed this petition for administration on the advice of my brother, W. E. Waldrup, and I did do it." The ordinary testified that Miss Waldrup stated that she sanctioned the acts of her brother for which he had been removed.

Just after Miss Waldrup had testified as above shown, the attorney for the caveators asked her the following questions: "You still don't intend to check over? You think everything he paid was all right?" The questions were objected to as irrelevant, and the court sustained the objection. Error is assigned on the ruling.

Counsel for the caveators asked Miss Waldrup the following question: "That was what you said, you thought it was proper that your individual attorney should be paid out of the funds of the estate?" The question was asked after the witness had testified that she had employed lawyers to file an answer to a certain petition, and that she did not remember saying in the ordinary's court that her brother had paid them out of the estate. The court ruled the question irrelevant, and error is assigned on the ruling.

Appropriate exceptions were taken to a statement made by the

court in the presence of the jury, during the examination of Miss Quincy Belle Waldrup, as follows: "There is not a beneficiary out of a million who understands the rules of inheritance. To put her on trial before she is appointed, if she should be appointed, I presume and anticipate she is going to follow the law. I think that is stretching the examination too far. Suppose we go ahead into the question, and find out whether or not a majority of the relatives want her or Mr. Bailey." Exceptions were taken to the following statement of the court in the presence of the jury: "Suppose we go ahead into the question, and find out whether or not a majority of the relatives want her or Mr. Bailey. I am sure the ordinary has it within his power to remove her if she is guilty of defeasance in office. He can revoke her letters. She has to give bond to Judge Head before she can get letters of administration, if she gets them." Exceptions were taken to the following statement by the court in the presence of the jury: "We are not trying her now. I don't think Judge Head is going to appoint her unless she gives a good bond, and he won't let her stay there unless she complies with the law; but that is a question that comes up on the grounds of removal." Also to the following statement, likewise made: "I don't think the question here is what her qualifications are for administrator, if she is properly chosen by a majority of the people who inherit the estate, because those people are protected by the bond she will have to give at the time of her appointment." Exceptions also are to the following statement, likewise made: "The question of fact is whether she labors under a disability; that is the only question I see. If she is of sound mind, if she is able to become administrator, if she is selected by the numerical majority, that will be the rule." Exception was taken to the court's charge to the jury, in substance, that if Miss Waldrup had been selected by a majority of the next of kin, was of sound mind and was laboring under no disability, the verdict should be for her, and that she was entitled as a matter of law to be appointed.

The Code, § 113-1202, provides: "In the granting of letters of administration of any kind, the following rules shall be observed, the applicant being required, in all cases, to be of sound mind, and to be laboring under no disability." The following parts of the section state the order of preference in the granting of letters. The answer to the questions raised in this case depends on whether

the first sentence in the quoted section is to be construed as stating exclusive disqualifications or whether it states minimum qualifications only. The majority opinion in Langill *v.* Stewart, 117 Wash. 268 (201 Pac. 28), expresses my conclusion so concisely that I take the liberty to quote from it. The probate Code of the State of Washington, § 61, provides: "Administration of the estate of the person dying intestate shall be granted to some one or more of the persons hereinafter mentioned, and they shall be respectively entitled [to] in the following order: 1. Child or children . ." Section 87 of the Code provides: "The following persons are not qualified to act as executors or administrators: Corporations, nonresidents of this State, minors, persons of unsound mind, or who have been convicted of any felony or misdemeanor involving moral turpitude." The majority opinion stated: "But the statute . . prescribes the order in which persons are respectively entitled to administer upon an estate, and elsewhere . . . prescribes who are disqualified to act. The evidence shows that the appellant is first in order of the enumerated persons entitled to appointment, and shows further that the disqualifications he was found to possess are not among the statutory disqualifications. The appellant contends that these provisions of the statute are mandatory; that the enumeration of certain disqualifications by the statute precludes the idea that other disqualifications may exist; and that, in determining who may be appointed as an executor or administrator, the courts are without power or right to adjudge a person disqualified on grounds which the statute does not make disqualifications. We are unable to agree with these contentions. The statute, while it defines certain things as disqualifications, does not say in terms, nor do we think by necessary implication, that there shall be no other. The purpose of administration is to preserve the estate and cause it to pass to the heirs and distributees without waste or loss, and without undue delay. In appointing an administrator the court acts judicially, not ministerially, and it is as much its judicial duty to guard an estate against possible waste and loss as it is to take action against waste and loss after it had occurred. It is true that the right to administer an estate is a valuable right. But, to paraphrase the language of Mr. Justice Woods in Ex parte Small, 69 S. C. 43 (48 S. E. 40), no right is arbitrary or unqualified by a correlative right. The right of those interested to have

an estate administered and distributed in accordance with law is the dominant right; the right of any particular person to administer the estate is a secondary right. When the allowance of the claim to exercise this secondary right may result in defeating the primary right, it should be refused. It may be that our conclusion trenches upon the weight of judicial authority. But the cases, for the greater part, are based upon and follow the rigid rules of the common law. In this State the administration of estates is wholly statutory, and we feel free to give the statutes that construction which in our judgment will best accord with their purpose and spirit."

The decisions in Georgia on this question have followed the logic and rationale of the foregoing opinion; and while we have not found a case involving the exact question raised in this case, there are several which authorize the denial of letters of administration to those ordinarily entitled thereto by order of preference *on grounds of disqualification not specifically set forth in the Code,* § *113-1202. Davis* v. *Davis,* 33 *Ga. App.* 628 (127 S. E. 779), and cit.; *Walker* v. *Rowe,* 41 *Ga. App.* 769 (154 S. E. 722); *Mattox* v. *Embry,* 131 *Ga.* 283 (62 S. E. 202). See also 33 C. J. S. 945, § 46.

It is clear to me that the issue of the disqualification of Miss Waldrup was raised in this case, and that the evidence authorized a finding that she was not a fit and proper person to be appointed, because of her attitude toward the illegal acts of her brother. Such an attitude would be quite important in her management of the estate, collecting items which had been improperly paid out, and whether or not she would do similar acts. It is certainly the right of those interested in an estate to have a person handle it who will handle it legally and in such a way that there will not be delay and lawsuits in recovering money or property lost by reason of mismanagement. They have a right to protect the estate from mismanagement before they are injured. They are not required to wait for the mismanagement and sue bondsmen. They are entitled to lock the proverbial barn door before the horse gets away.

I am of the opinion that the legal competency and fitness of the applicant was raised by the pleadings and the evidence, and that the statements of the court and the charge to the jury which is complained of require the grant of a new trial. As to necessity for a motion to declare a mistrial on account of statements by a

trial judge in the presence of the jury, see *Allen* v. *State,* 194 *Ga.* 178 (21 S. E. 2d, 73). I am also of the opinion that counsel for the caveators were entitled to cross-examine Miss Waldrup on the matters referred to above, in order to ascertain more definitely if possible her attitude toward the questions concerning which she was being examined.