HEAD, ordinary, *v.* WALDRUP, administratrix.

No. 14734. FEBRUARY 10, 1944. REHEARING DENIED MARCH 10, 20, 1944.

*Joel B. Mallet,* for plaintiff in error.

*Christopher & Futral,* contra.

BELL, Chief Justice. The Code, § 113-1901, declares: "Whenever, from any change of residence, or other cause, an administrator or executor may desire to remove the jurisdiction of his trust from the court of ordinary of the county of the residence of testator or intestate to that of his own residence, the same may be done by complying with the following requisitions: 1. By obtaining a copy of all the records of the ordinary relative to his trust, and causing the same to be recorded by the ordinary of the county of his residence. 2. By giving to the ordinary of his county new bond, with good security, for the discharge of his duty as administrator,

in the same manner as if the administration were originally granted there. 3. By filing with the ordinary of the county having original jurisdiction a certificate, under the seal of the ordinary of the county to which the trust is to be removed, that the foregoing provisions have been complied with. 4. The ordinary having jurisdiction shall then pass an order transferring the trust to the ordinary of the other county. 5. Upon compliance with the provisions of this section the whole of said trust is thereby removed from the one county to the other so that every question growing out of or affecting said trust shall be heard and tried only in that county to which said trust has been removed."

■ It is contended by counsel for the plaintiff in error, respondent in the trial court, that the petition for mandamus fails to show that the petitioner "filed with the court of ordinary having original jurisdiction" the certificate of the other ordinary, as required by § 113-1901 (3). There is no merit in this contention, as paragraph 2 of the plaintiff's amendment alleged that a letter to the respondent from the plaintiff's attorneys containing such certificate was "filed and so marked in the office of the court of ordinary of Butts County, Georgia, on April 28, 1943." While the amendment refers to an exhibit, which was only a copy of the letter, stating that this exhibit had been filed, the obvious meaning is that the letter itself had been filed, and with it the certificate that it contained. But it also appeared that a second certificate was issued, and in paragraph 3 of the amendment, it was alleged that such second certificate was filed.

■ The next reason urged why the demurrer to the petition for mandamus should have been sustained, is that the proceedings before S. B. Wallace, the ordinary of Spalding County, were nugatory, because the record, which contains copies of the pleadings in the court of ordinary of Butts County, shows that he had been "of counsel" for the petitioner, Quincey B. Waldrup, continuously up to the beginning of the instant proceeding. It is insisted that Wallace was disqualified as ordinary, and could "pass no valid order approving his client's bond, and could issue no valid certificate or order to the ordinary of Butts County requiring the removal of all jurisdiction of this trust to a court over which the former counsel will preside as judge."

There is no merit in this contention. The relevant provision of

law is, that no judge shall preside or act "in any case or matter" in which he has been of counsel, without the consent of the parties. Code, § 24-102. It appears from the record that Mr. Wallace represented Quincey B. Waldrup in her application for appointment as administratrix de bonis non in Butts County; that her application was litigated, but finally terminated in her favor. See *Bailey* v. *Waldrup,* 69 *Ga. App.* 204 (24 S. E. 2d, 821). After her qualification as administratrix in that county, she undertook to remove the administration to Spalding County. To accomplish such removal, it was necessary, among other things, that she give to the ordinary of the latter county a new bond with good security. Although Wallace as such ordinary may have acted in his judicial capacity in approving the new bond, this was not the same case or matter in which he had been "of counsel," and therefore he was not disqualified to act in such matter. He had represented the petitioner only in her individual capacity, when she was seeking appointment as administratrix, while in the proceeding for removal she was acting as administratrix, and in a different case or matter. It does not appear that Wallace ever represented her in any matter touching her trust as administratrix, and he was not disqualified merely because she was his former client. Compare *Conyers* v. *Ford,* 111 *Ga.* 754 (36 S. E. 947); *Moore* v. *Dugas,* 166 *Ga.* 493 (4 *a*) (143 S. E. 591).

For similar reason, he was not disqualified to make the certificate required by § 113-1901 (3), for this was likewise a different case or matter from that in which he had been of counsel. In this view, we need not determine whether the act of making such certificate was judicial or ministerial; nor do we decide whether the attack here made is a collateral attack or whether such an attack would be sustainable in any event. As to ministerial acts, see *Thompson* v. *Wilson,* 55 *Ga.* 607; *Walden* v. *County of Lee,* 60 *Ga.* 296; *Thornton* v. *Ferguson,* 133 *Ga.* 825 (67 S. E. 97); *Waldrop* v. *Chandler,* 155 *Ga.* 829 (3 *a*), 832 (118 S. E. 745); *Head* v. *Waldrup,* 193 *Ga.* 165 (2) (17 S. E. 2d, 585). As to a collateral attack, see *Echols* v. *Barrett,* 6 *Ga.* 443 (2); *Burnside* v. *Terry,* 45 *Ga.* 622 (3); *Wood* v. *Clarke,* 188 *Ga.* 697 (4 S. E. 2d, 659, 124 A. L. R. 1077). The present case differs on its facts from *Murray County* v. *Pickering,* 195 *Ga.* 182 (23 S. E. 2d, 436), and from other cases there cited, where it appeared that the judge had been of counsel in the same cause or matter.

506

■ It is insisted next that the demurrer should have been sustained, for the reason that the bond given in Spalding County was void, in that it was not accompanied by any power of attorney authorizing the person who signed it in behalf of the surety company so to do. To support this contention, counsel cites the case of *Maddox* v. *Waldrop*, 60 *Ga. App.* 702 (4 S. E. 2d, 684), relating to an appeal bond. In that case, reference was made to *Southern Express Co.* v. *Wheeler*, 72 *Ga.* 210 (3), and *Harwell* v. *Marshall*, 125 *Ga.* 451 (2) (54 S. E. 93), relating to certiorari bonds, and holding that the authority of an agent or attorney in fact to execute such a bond must expressly appear. See also *Foley* v. *Bell*, 4 *Ga. App.* 447 (2) (61 S. E. 856) ; *Anderson* v. *Southern Railway Co.*, 9 *Ga. App.* 199 (70 S. E. 983) ; *Seaboard Air-Line Railway Co.* v. *Rosenbusch*, 12 *Ga. App.* 154 (76 S. E. 1041). The record here presents a materially different situation, and we do not think decisions like those just referred to are applicable. The Code, § 113-1217, provides that "every administrator, upon his qualification, shall give bond, with good and sufficient security, to be judged of by the ordinary, in a sum equal to double the amount of the estate to be administered; such bond shall be payable to the ordinary for the benefit of all concerned." § 113-1901 (2), provides that an administrator in removing administration to the county of his residence shall give "to the ordinary of his county new bond, with good security, for the discharge of his duty as administrator, in the same manner as if the administration were originally granted there." Accordingly in this case, the ordinary of Spalding County was the proper officer to approve the new bond, and he did approve it. Not only this, but the plaintiff alleged that she had "complied with all of the requirements necessary to transfer the proceedings in connection with the administration of the estate of Mrs. Emma B. Maddox from the court of ordinary in Butts County to court of ordinary of Spalding County."

In these circumstances, the petition was not subject to general demurrer because no power of attorney was shown. Such an instrument may be in existence, and for aught that appears it may have been physically exhibited to the ordinary of Spalding County. Compare *Crumm* v. *Allen*, 11 *Ga. App.* 203 (75 S. E. 108). If such a power of attorney does exist, the bond is not void, and the

question as to its validity is a mere matter of proof. Therefore, as to this point, the allegations were sufficient to withstand the general demurrer. Code, § 4-105; *Johnson* v. *Johnson,* 184 *Ga.* 783 (2) (193 S. E. 345, 114 A. L. R. 657); *Massachusetts Bonding & Insurance Co.* v. *United States Conservation Co., 29 Ga. App.* 80 (4) (114 S. E. 62); Cooke v. Seligman, 7 Fed. 263; Brady v. J. B. McCrary Co., 244 Fed. 602; Mutual Life Insurance Co. v. Langley, 145 Fed. 415; 54 C. J. 326, § 245.

If, as a matter of fact, no such authority exists, persons interested in the estate are not remediless. See the Code, §§ 113-1224-1226.

■ It is further insisted that the Code, § 113-1901, was designed to apply only to cases where administrators change residence after appointment; and that the legislature did not intend to give an added advantage to a stranger from a foreign county, so that he could, as a matter of law, go into the county where the deceased resided, and after thus obtaining his appointment, transfer the entire administration to a county where none of the property of the estate is located and where the deceased had been a stranger.

By section 2 of an act approved December 10, 1812, it was provided: "Any . . administrators . . whose residence shall be changed from one county to another, either by the creation of a new county, removal, or otherwise, shall have the privilege of making the annual returns required of them by this act, to the court of ordinary of the county in which they reside, by having previously obtained a copy of all the records concerning the estates for which they are bound . . and having had the same recorded in the proper office in the county in which they then reside, and having given new bond and security as the law directs, for the performance of their duty." Ga. L. 1812, p. 86; Cobb's Digest, 318.

By an act approved February 22, 1850, it was provided: "Sec. I. Be it enacted, That the provisions of the second section of the act" of 1812, just quoted, "which authorizes . . administrators . . whose residences may be changed, to make returns to the court of ordinary of the county of their residence, on complying with certain prerequisites, shall be applicable to, and may be availed of, by any . . administrator . . who may at the time of his appointment and qualification, reside in a different county from that in which letters . . of administration . .

may be granted. . . Sec. II. Any such . . administrator . . availing himself of the provisions of this act, or of the said recited section, shall be liable to the same proceedings in the court of ordinary to which his returns may be made, as if he had been appointed and qualified in said court, and shall be dismissed from the trust in and by said court, upon his complying with the terms of the law, in relation to letters dismissory." Ga. L. 1850, p. 39; Cobb's Digest, 339.

The law as embodied in the Code, § 113-1901, supra, provides that the jurisdiction may be removed "whenever, from any change of residence, or other cause," an administrator may desire such change. This provision was evidently based upon the acts of 1812 and 1850, from which we have just quoted. In view of its background, we are of the opinion that it would include an administrator who "at the time of his appointment and qualification" resided "in a different county from that in which" his letters of administration were granted, as stated in the act of 1850, and that it is not subject to the construction insisted on by counsel. See also *Justices of Inferior Court* v. *Selman,* 6 *Ga.* 432 (3).

■ The defendant contends also that "it was error to overrule the demurrer to the petition as amended for the reason that the exhibits attached to the petition show that 'citation for settlement was pending at the time of such proposed removal in the court of ordinary' of Butts County;" and as to this point, § 113-1903 is cited.

As we have seen, § 113-1901 authorizes an administrator to remove "the jurisdiction of his trust from the court of ordinary of the county of the residence of . . intestate to that of his own residence," and subsection 5 provides: "Upon compliance with the provisions of this section the whole of said trust is thereby removed from the one county to the other so that every question growing out of or affecting said trust shall be heard and tried only in the county to which said trust has been removed." This latter provision is a codification from the act of March 5, 1856, providing that by such removal, "the whole of said trust is thereby removed from the one county to the other so that all and every question growing out of or affecting said trust, whether by caveat to the probate of the will, or granting letters dismissory, or any other matter or thing pertaining to said trust shall be heard and tried

only in that county to which said trust has been removed." Ga. L. 1855-6, p. 152. § 113-1902 provides for removal of a pending "suit" against an administrator or executor for settlement, upon compliance with stated requirements, without removing the entire administration or trust. § 113-1903, cited by counsel, is as follows: "The provisions of the preceding section [113-1902] shall apply only to cases where neither the parties plaintiff nor defendant were residents of the county where the citation was originally issued at the time the suit was brought or application for removal is made. The provisions of the preceding section shall not apply to cases in which citations for settlement against such executors or administrators are pending at the time of such proposed removal in the court of ordinary, without the consent of all the parties at interest." The section just quoted refers in terms only to proceedings to remove a "suit" against an executor or administrator, and does not limit or qualify § 113-1901, which provides for removal of the entire trust, and under which the petitioner for mandamus in the instant case was acting. After removal under § 113-1901, "every question growing out of or affecting said trust shall be heard and tried only in that county to which said trust has been removed." Construing this provision in the light of its source, to wit, the act of 1856, supra, we are of the opinion that the mere *pendency* of a citation for settlement in the court of ordinary of original jurisdiction would not prevent a transfer of the administration to the other county.

■ It is further urged that the demurrer should have been sustained because the petition sought to enforce a private right, and did not show pecuniary loss for which the petitioner could not be compensated in damages.

It is declared in the Code, § 64-105, that "in order for plaintiff to enforce a private right by mandamus he must show pecuniary loss for which he can not be compensated in damages." This provision is not of statutory origin, but is a mere codification of' a common-law principle, to which reference had been made in decisions by this court. *Atlantic Ice and Coal Corporation* v. *Decatur*, 154 *Ga.* 882 (1) (115 S. E. 912); *Board of Commissioners of Manchester* v. *Montgomery*, 170 *Ga.* 361 (2) (153 S. E. 34). Although the Code of 1933 was the first Code that contained the identical language, the principle had been embodied in each previous

Code, being within the provision that "the writ of mandamus may be used to compel due performance, if there shall be no other specific remedy for the legal rights." See Code of 1863, § 3130, Code of 1933, § 64-101. It has been several times held by this court that a section of the Code, not of statutory origin, must be construed merely as a codification of the existing law, unless there be words in the section which manifestly demand a construction which would change the rule in force at the time the Code was adopted. *Wilensky* v. *Central of Georgia Railway Co.,* 136 *Ga.* 889, 891 (72 S. E. 418, Ann. Cas. 1912D, 271). To the same effect, see *Bush* v. *McCarty,* 127 *Ga.* 308, 310 (56 S. E. 430, 9 Ann. Cas. 240); *Calhoun* v. *Little,* 106 *Ga.* 336 (3) (32 S. E. 86, 43 L. R. A. 630, 71 Am. St. R. 254); *Wright* v. *DuBignon,* 114 *Ga.* 765, 769 (40 S. E. 747, 57 L. R. A. 669); *Seaboard Air-Line Railway Co.* v. *Leader,* 115 *Ga.* 702, 703 (42 S. E. 38); *Davis* v. *First National Bank of Blakely,* 139 *Ga.* 702 (78 S. E. 190, 46 L. R. A. (N. S.) 750); *Evans* v. *Brooke,* 182 *Ga.* 197, 206 (184 S. E. 800).

It is generally held that the existence of another legal remedy will not bar mandamus, where it is not as full, complete, and adequate as that remedy would be. *Hogansville Banking Co.* v. *Hogansville,* 156 *Ga.* 855 (4) (120 S. E. 604). Even if the plaintiff here might have sued the respondent for damages, such remedy would not have been as complete and adequate as the remedy of mandamus. Jurisdiction and venue could not very well be measured in terms of money, and so, in the very nature of the right asserted, an action for damages would not have been adequate. In this view, it is unnecessary to determine whether the rule as to the existence of another remedy would apply at all, where, as here, the duty is one that is specifically imposed by statute. Compare *Gresham* v. *Pyron,* 17 *Ga.* 263 (3); *Mitchell* v. *Hay,* 37 *Ga.* 581; *Bailey* v. *Strohecker,* 38 *Ga.* 259 (95 Am. D. 388); *Cheney* v. *Newton,* 67 *Ga.* 477; *Scott* v. *Bedell,* 108 *Ga.* 205 (33 S. E. 903); *Williams* v. *McArthur,* 111 *Ga.* 28 (3) (36 S. E. 301); *Southern Ry. Co.* v. *Atlanta Stove Works,* 128 *Ga.* 207 (57 S. E. 429); *Dollar* v. *Wind,* 135 *Ga.* 760 (2) (70 S. E. 335); *Douglas* v. *Austin-Western Road Machinery Co.,* 173 *Ga.* 834 (161 S. E. 811); *City of Waycross* v. *Cullens,* 190 *Ga.* 823 (10 S. E. 2d, 920); *Speed Oil Co.* v. *Aldredge,* 192 *Ga.* 285 (5) (15 S. E. 2d, 214). On the general subject, see *Terrell* v. *Georgia Railroad & Banking*

*Co.,* 115 *Ga.* 104 (41 S. E. 262) ; 13 Am. Jur. 438, § 371; 34 Am. Jur. 838-41, §§ 42-46; 38 C. J. 561-63, §§ 32-34.

■ In view of the recital in the bill of exceptions that it was "agreed that the case should be decided on demurrer without further hearing upon said rule nisi," and the statement in the judge's certificate that "after ample time was allowed the court proceeded to decide the case as was agreed by counsel for both sides," there is no merit in the contention that the judge erred in granting a mandamus absolute, after overruling the demurrer, without considering the answer and without further hearing. The foregoing deals with all of the questions raised by the plaintiff in error. The judgment was not erroneous for any reason urged.

*Judgment affirmed. All the Justices concur.*