36169. L. L. MINOR COMPANY, INC. et al. v. PERKINS.

MARSHALL, Justice.

This is a suit for liquidation of the assets of a closely held, family corporation, on the ground that those in control of the corporation have committed illegal or fraudulent acts and wasted or misapplied corporate assets. Code Ann. § 22-1317 (a) (1) (B) and (D). This suit also seeks certain injunctive relief against the president of the corporation, who is being sued in his joint capacity as executor of the estate of the former president of the corporation, founder, and majority shareholder.

The corporation is the L. L. Minor Company, Inc., which was founded by L. L. Minor, Sr., in 1964. The corporate assets consist of approximately ·10,000 acres of farm and timberland in Macon, Troup and Taylor Counties. Until L. L. Minor, Sr.'s, death in 1977, he served as president of the corporation at an annual salary of $25,000,[1] and Dr. James B. Minor served as vice-president.

In 1967, the initial stock in the corporation was recalled, and

---

[1]There is testimony in the record that L. L. Minor, Sr., wanted to withdraw a larger salary from the corporation, but he was prevented from doing so by the Internal Revenue Service.

there were reissued 19 shares of class A voting stock, of which L. L. Minor, Sr., was issued 15 shares; and there were also issued 1,751 shares of class B, nonvoting stock, of which L. L. Minor, Sr., was issued 1,083 shares. Thelma Barrow Minor, the wife of L. L. Minor, Jr., was issued one share of class A stock and 47 shares of class B stock.[2] Holders of class B stock share equally in earnings, dividends, and in liquidation, and in all respects with holders of class A stock, with the exception that the holders of class B stock lack voting rights.

At a stockholders and board of directors meeting in 1976, a resolution was adopted by the board giving Dr. James B. Minor the option to purchase the 15 shares of class A voting stock owned by L. L. Minor, Sr., in the event of L. L. Minor, Sr.'s, death. However, the articles of incorporation provide that, "Any share of stock to be sold shall be first offered back to the corporation, and/or all the remaining stockholders at book value as disclosed by the books and records of the corporation on the last day of the month next preceeding such offer, plus 10% of the last named amount . . ."

After L. L. Minor, Sr.'s, death in 1977, the board of directors elected Dr. James B. Minor president of L. L. Minor Co., Inc., and he also qualified as executor of L. L. Minor, Sr.'s, estate.[3] Dr. Minor testified at the hearing below that he has devoted a considerable portion of his time to performing his duties as executor of the estate and president of the corporation. The relative valuation of the corporation and the estate is the subject of dispute, but, from the evidence, it appears that the corporate property constitutes from one fourth to slightly less than one half of the estate.[4] The corporation has one employee, a Mr. Robert Standridge. Mr. Standridge had worked for L. L. Minor, Sr., for approximately 30 years. After L. L. Minor, Sr.'s, death, Standridge has performed services for the corporation and the estate, which have each paid one half of his salary. In addition, the corporation has furnished Standridge with a Bronco truck.

This suit to appoint a receiver to liquidate the assets of the

---

[2] Of the remaining shares of class A voting stock, Lewis L. Minor, Jr. (Thelma Barrow Minor's husband), James Barry Minor (Dr. Minor), and Mary T. Minor were each issued one share.

Fourteen members of the family were issued class B, nonvoting stock. Each family member was issued 47 or 48 shares.

[3] It is alleged in the petition that all of the members of the board of directors, except Dr. Minor, have resigned.

[4] In the findings of fact, the trial court found that the estate is valued at

corporation was filed by the temporary administrator[5] of the estate of Thelma Barrow Minor in the Superior Court of Taylor County in February of 1978.[6] In the complaint, the plaintiff alleges that over $200,000 has been improperly withdrawn from the corporation and is earning interest for the estate.[7] The case remained dormant for approximately a year, but in February of 1979, Dr. Minor informed the shareholders of L. L. Minor Co., Inc., by letter that he is seeking the approval of the Probate Court of Fulton County to purchase the 15 shares of class A voting stock from the estate of L. L. Minor, Sr.[8] The plaintiff then filed supplemental pleadings seeking to enjoin Dr. Minor from purchasing the stock from the estate on the ground that this would violate the preemptive rights granted the other shareholders in the articles of the corporation. In the supplemental pleadings, the plaintiff also alleges that Dr. Minor's payment of a salary from the corporation to himself is illegal.

After conducting a hearing, the superior court entered a judgment appointing a receiver to liquidate the assets of the corporation. The reasons given by the superior court in support of its decision to order the assets of the corporation liquidated are: (1) The $25,000 annual salary withdrawn from the corporation by Dr. Minor constitutes a ground for his removal under *Clark v. Clark,* 167 Ga. 1 (144 SE 787) (1928); (2) Dr. Minor's withdrawal of this salary is unauthorized under Code Ann. §§ 113-1503, 113-2012; (3) In that the estate of L. L. Minor, Sr., has greater assets than the L. L. Minor Co., the corporation is wasting corporate assets by paying one half of the common employee's (Robert Standridge) salary and

---

approximately three million dollars and that the corporation is valued "at about one million dollars or $1,300,000." However, in the conclusions of law, the trial court ruled that the corporate property is "about one fourth" as large as the estate.

[5]The defendants do not question the authority of the temporary administrator to bring this suit.

[6]Code Ann. § 22-1317 (b) states that proceedings to liquidate the assets of a corporation shall be brought in the county in which the registered office of the corporation is situated, which is Taylor County here.

[7]It was established at the hearing below that L. L. Minor, Sr., withdrew this amount from the corporation prior to his death. When Dr. Minor became aware of this, he issued an executor's note for $200,000 from the estate to the corporation with interest being paid from the date the money was withdrawn. The trial court did not find that this constituted a waste of corporate assets. We agree that it does not. Cf., *Fine v. Saul,* 183 Ga. 309 (188 SE 439) (1936).

[8]At the time this suit was brought, Dr. Minor was administering the estate of L. L. Minor, Sr., in the Probate Court of Taylor County. Under the provisions of Code Ch. 113-19, Dr. Minor subsequently removed administration of the estate to Fulton County, which is the county of his residence. The plaintiff argues that the pendency of this suit made such removal improper, but we disagree. See *Head v. Waldrup,* 197 Ga. 500 (5) (29 SE2d 561) (1944).

furnishing him a truck. The superior court also enjoined Dr. Minor from purchasing the 15 shares of class A voting stock from the estate of L. L. Minor, Sr., without honoring the preemptive rights of the other shareholders of the corporation. This appeal follows. We reverse.

1. There is no evidence in the record to support the grant of such drastic equitable relief as ordering the assets of the corporation liquidated. In addition, most of the matters urged as reasons for liquidation of the corporation are within the cognizance of the probate court rather than the superior court. Likewise, the question concerning approval or disapproval of the proposed stock sale from the estate to Dr. Minor is within the cognizance of the probate court; therefore, the entry of the injunction must also be reversed.

2. The superior court erred in ruling that the $25,000 annual salary withdrawn from the corporation by Dr. Minor constitutes a ground for his removal under *Clark v. Clark*, supra. The superior court also erred in ruling that the failure of Dr. Minor to comply with the provisions of Code Ann. § 113-2012 before withdrawing the salary constitutes a ground for liquidation of the corporation, and that the withdrawal of this salary is in violation of Code Ann. § 113-1503.

(a) In *Clark v. Clark*, supra, this court held that testamentary trustees' acceptance of salaried, elective offices in a corporation, whose stock constituted the principal part of the trust estate, was a ground for removal of the trustees, because of the possible conflict between their interests in retaining the stock when the interest of the trust might require its sale. The decision in *Clark* was, of course, grounded on a construction of the trust instrument under review in that case, and of importance was the fact that the testator had contemplated that it might become necessary for the trustees to sell the stock, as well as the fact that the testator had not authorized the trustees to elect themselves as officers of the corporation.

The concern was also expressed in *Clark* that the trustees' personal interests would conflict with their duties as trustees, because the salaries paid to them by the corporation would reduce the amount that would otherwise be distributed to the beneficiaries of the trust. However, the enactment of Code Ann. § 113-2012, supra, in 1973 authorizes an executor or trustee to receive compensation from a corporation or other business enterprise in which the estate or trust owns an interest, provided that: "(a) The services provided by such fiduciary to such corporation or other business enterprise are of a managerial, executive, or business advisory nature. (b) The compensation received for such services is reasonable, and (c) Said

services are performed and said fiduciary is paid pursuant to a contract executed by the fiduciary and the said corporation, or business enterprise, which contract is approved by a majority of those members of the board of directors or other similar governing authority of the corporation or business enterprise, who are not officers or employees of such fiduciary and are not related to such fiduciary, and provided such contract is approved by the judge of the probate court of the county where such administration proceeding is pending or the situs of the trust."[9] Code Ann. § 113-2013 states that if an executor receives compensation from a corporation or other business enterprise under § 113-2012, the executor shall not receive extra compensation in respect to such services for extraordinary service as provided in § 113-2008.[10]

(b) We find the conflict-of-interest situation condemned in *Clark v. Clark,* supra, to be inapposite to this case for the following reasons. The prohibition in *Clark* is against trustees' electing themselves as salaried officers of a corporation whose stock is owned by the trust, at least in the absence of authorization in the trust instrument. It is entirely unclear that this prohibition would apply against an executor of an estate who was serving as an officer of the corporation at the time of the testator's death and who is then elected by the board of directors as president. And, even if it be said that a conflict of interest exists by reason of Dr. Minor's simultaneously serving as executor of the estate of L. L. Minor, Sr., and president of the L. L. Minor Co., the conflict of interest is not a ground for liquidation of the assets of the corporation. Under *Clark,* such a conflict of interests would be harmful to the beneficiaries of the estate who would stand to inherit the stock[11] and not the shareholders of the corporation. Therefore, it is the probate court, where the will has been probated and the estate is being administered, that should determine whether a conflict of interests exists and the appropriate remedy therefor.[12]

---

[9]We note that each member of the board of directors was either related to Dr. Minor or an employee of the company. Thus, it would have been impossible to comply with the prong of subsection (c) requiring approval by a majority of the board who are not officers or employees of such fiduciary and are not related to such fiduciary.

[10]Section 113-2013 further provides that the receipt by such fiduciary of extra compensation for extraordinary services rendered in respect to other assets or matters involving the estate or trust is not prohibited.

[11]Thelma Barrow Minor is the beneficiary of certain specific bequests in the will of L. L. Minor, Sr., but she does not stand to inherit any of the stock in the L. L. Minor Co.

[12]The will, which has not been introduced in evidence in this case, may well

"While under Code § 113-2203 a court of equity has concurrent jurisdiction with the ordinary over the settlement of accounts of administrators, and under Code § 37-403 equity, upon the application of an interested person, will assume jurisdiction to prevent loss, yet the 1945 Constitution, art. VI, sec. 6, par. 1, vests in the ordinary jurisdiction of probate, and, hence, equity will exercise jurisdiction in such matters only when the available remedies at law are inadequate." *Hamrick v. Hamrick,* 206 Ga. 564 (58 SE2d 145) (1950); *Vowell v. Carmichael,* 235 Ga. 387, 389 (219 SE2d 732) (1975).[13]

(c) Nor does Dr. Minor's failure to obtain approval of the probate court under Code Ann. § 113-2012 for withdrawal of his annual salary as corporate president constitute a ground for liquidation of the corporation.

As previously stated, Dr. Minor had served as vice-president of the corporation during the period in which L. L. Minor, Sr., was president. After the death of L. L. Minor, Sr., the board of directors elected Dr. Minor as president. At the hearing below, Dr. Minor testified without contradiction that he has continued to perform duties of the office of president of the corporation, and that he has continued to draw the same salary drawn by L. L. Minor, Sr. Under these circumstances, the withdrawal of such salary is not fraudulent or illegal within the meaning of Code Ann. § 22-1317 (a) (1) (B), or a misapplication or waste of corporate assets within the meaning of Code Ann. § 22-1317 (a) (1) (D). If, as argued by the plaintiff, the withdrawal of this salary is unauthorized because the procedures established in Code Ann. § 113-2012 have not been followed, the appropriate forum in which to file that objection is the probate court in which the estate is being administered.

(d) We cannot agree with the ruling of the trial court that Dr. Minor's withdrawal of his salary as corporate president is in violation of Code § 113-1503: "The executor shall take no beneficial interest under any will (except his commission), unless the same is expressly given to him by the will." Dr. Minor's receipt of this salary does not constitute receipt of a beneficial interest under the will.

---

contain authorization for Dr. Minor to continue to operate the L. L. Minor Co. and/or serve as president. See *Lowden v. Eskedor,* 169 Ga. 672 (1) (151 SE 385) (1929). Even where the will is silent on the subject, an executor may exercise his discretion in carrying on the business of the testator, although approval of the probate court is required after expiration of the year of the testator's death. Code Ann. §§ 113-1101, 113-1523.

[13]Dr. Minor argues that the plaintiff is not "interested in" the estate of L. L. Minor, Sr., within the meaning of Code § 37-403 and, therefore, lacks standing to sue.

3. The superior court also erred in ruling that the corporation's payment of one-half of Mr. Standridge's salary, and the furnishing to him of a Bronco truck, constitute a waste of corporate assets and, thus, a ground for liquidation of the corporation.

The superior court premised this ruling on a finding that the corporation should have paid less than one-half of Mr. Standridge's salary and the estate should have paid more, because the corporation is only about one-fourth as large as the estate. However, in another portion of the judgment appealed from, the trial court found that the corporation was approximately one-half as large as the estate. In any event, the appropriate criterion for determining whether the payment of a given salary to a corporate employee is a waste of corporate assets is whether the employee has performed services to the corporation commensurate with the salary paid. There is no evidence in the record to indicate or suggest a negative answer to this question.

4. Finally, we hold that the superior court erred in enjoining Dr. Minor from purchasing the stock from the estate of L. L. Minor, Sr.,[14] because, again, the probate court is the appropriate forum for the plaintiff to file objections to Dr. Minor's proposed purchase of this stock.

In this case, the plaintiff, as well as the other shareholders in the corporation, have been given notice that Dr. Minor is seeking the approval of the probate court to purchase the stock from the estate, and the shareholders have been given notice of their right to file objections thereto.

If it is determined that the stock cannot be sold to Dr. Minor

---

[14]The trial court made two rulings concerning this proposed stock purchase with which we cannot agree.

First, the court ruled that if this stock is sold for less than its liquidation or fair market value, it will cause a diminution in the capital of the corporation and harm the shareholders, because there will be less money in the corporate treasury. This ruling overlooks the fact that the proceeds of the stock sale will be paid to the estate of L. L. Minor, Sr., and not into the corporate treasury.

Second, the court ruled that by claiming the right to buy this stock, Dr. Minor is claiming adversely to the estate. This a fiduciary is not permitted to do. *Hardeman v. Ellis,* 162 Ga. 664 (135 SE 195) (1926). By claiming the right to buy this stock, Dr. Minor is not claiming adversely to the estate, unless the stock is specifically bequeathed to someone else in the will, which does not appear to be the case here. An executor is not prohibited from purchasing property in his own name from the testator's estate, but he must exercise the utmost good faith. *King v. King,* 225 Ga. 142 (1) (166 SE2d 347) (1969).

until the preemptive rights of other shareholders are honored,[15] the probate court can and should refuse Dr. Minor's application to purchase the stock until these other shareholders are granted their rights of first refusal.

*Judgment reversed. All the Justices concur.*

SUBMITTED APRIL 25, 1980 — DECIDED
JUNE 10, 1980.

*Robert N. Meals, Stan Kreimer, Jr., Ray L. Allison,* for appellants.

*Byrd & Anthony, Garland T. Byrd, H. Thad Crawley,* for appellee.

---

[15]The stock option granted to Dr. Minor does violate the preemptive rights of the other shareholders. Since these preemptive rights are granted the other shareholders in the articles of incorporation, it would require an amendment to the articles in order to abrogate these rights. Code Ann. § 22-902 (b) sets out the procedure for amending the articles of incorporation after the issuance of shares.

However, even if the passage of the resolution giving Dr. Minor the stock option did not comply with the procedures for amending the articles of incorporation, there is still the possibility that any shareholders voting in favor of the resolution would have thereby waived, or have become estopped to exercise, their preemptive rights.